IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| MORRISON INFORMATICS, INC., ANTHONY M. GRIGONIS, AND MALCOLM H. MORRISON | : : : : : : : : : : : : : : : : : | No. 18 MAP 2015 |
| | | Appeal from the Order of the Superior Court at No. 467 MDA 2013 dated 8/12/14 affirming in part and vacating in part the Order entered 2/20/13 in the Cumberland County Court of Common Pleas, Civil Division, at No. 2011-4636 and remanding with instructions |
| v. | | |
| MEMBERS 1ST FEDERAL CREDIT UNION, MARK ZAMPELLI, AND SCOTT DOUGLASS | | |
| APPEAL OF: MEMBERS 1ST FEDERAL CREDIT UNION | | ARGUED: November 17, 2015 RESUBMITTED: January 20, 2016 |

***OPINION***

**CHIEF JUSTICE SAYLOR**[1]                                        **Decided: May 25, 2016**

The central question presented concerns whether a federal bankruptcy trustee may be substituted as a plaintiff in a civil action previously commenced by the debtor in bankruptcy in a Pennsylvania state court, although the statutory limitations period expired prior to the attempted substitution.

Morrison Informatics, Inc. (the "Company") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in September 2009. *See* 11 U.S.C. §§701-784. In due course, Leon P. Haller, Esquire (the "Trustee"), was appointed as trustee. *See id.* §701.

---

[1] This matter was reassigned to this author.

In May 2011, the Company and two shareholders (the "Shareholders"), who also apparently were officers of the corporation, commenced a civil action in the court of common pleas against Members 1st Federal Credit Union (the "Credit Union"), Mark Zampelli, and Scott Douglass by filing a praecipe for a writ of summons. *See* Pa.R.C.P. No. 1007. About a year later, at the Credit Union's instance, the common pleas court issued a rule requiring a complaint to be filed. *See id.* No. 1037(a).

In an ensuing complaint, the Company and the Shareholders asserted that, beginning sometime after January 2005 and continuing into 2009, the Company's finance manager, Zampelli, had colluded with a Credit Union relationships officer, Douglass, to embezzle Company funds. The complaint advanced claims against the Credit Union, Zampelli, and Douglass variously sounding in fraud, conversion, civil conspiracy, and negligence.[2]

The Credit Union interposed preliminary objections. This bid for dismissal was based, in material part, on the Company's lack of authorization to advance causes of action after seeking bankruptcy relief. According to the Credit Union, upon the filing of a Chapter 7 petition for relief, all equitable and legal interests – including causes of action which had previously arisen – became part of the bankruptcy estate subject to the Trustee's exclusive control.

The Trustee and the Shareholders responded with an amended complaint indicating, in the body of the pleading, that the action was being pursued by the

---

[2] Douglass eventually also filed a bankruptcy petition, albeit this is immaterial in the context of the Credit Union's present appeal.

Trustee.[3]  They simultaneously filed a motion seeking leave to amend the caption to substitute the Trustee for the Company as a plaintiff.

The Credit Union then lodged a second set of preliminary objections, in which it maintained, *inter alia*, that the Company's participation in the filing of the writ of summons was a nullity, given the Trustee's succession to the Company's rights and interests.  Further, according to the Credit Union, no new action could be commenced since the applicable statute of limitations had run.  *See* 42 Pa.C.S. §5524 (establishing a two-year limitations period for the commencement of actions, among others, seeking redress for injuries to persons or property founded on negligent, intentional, or otherwise tortious conduct, as well as certain other harms which may be remedied per theories sounding in trespass, including deceit or fraud).[4]

The common pleas court denied the motion to amend and sustained the preliminary objections.  Initially, the court found that the Shareholders lacked standing to pursue civil redress against the Credit Union for injuries suffered by the Company.  As to the Company's standing, the court agreed with the Credit Union's position that, when

---

[3] The amended complaint advanced an additional contract-based claim against the Credit Union.  The parties, however, do not suggest that this modification alters the legal analysis by which the present appeal should be determined.

[4] Per Section 108 of the Bankruptcy Code, a trustee may benefit from a two-year extension after an order for relief is deemed to have been issued by the bankruptcy court (or a longer period if a suspension of the initial limitations period occurs on or after the commencement of the bankruptcy case).  *See* 11 U.S.C. §108(a); *see also id.* §301(b) (prescribing that "[t]he commencement of a voluntary case . . . constitutes an order for relief").  Such provision does not appear to be relevant here, however, since the Trustee first attempted to bring himself into the record in the common pleas court more than two years after the Company filed its Chapter 7 petition (and there is no suggestion that a suspension of the initial limitations period occurred on or after the initiation of the bankruptcy proceeding).  In any event, the Trustee has not relied upon Section 108 in his submissions to this Court, the intermediate court, or the common pleas court.

a debtor files a bankruptcy petition, its property becomes that of the estate, and the debtor loses all rights to it. *See Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, No. 2011-4636 Civ. Term, *slip op.* at 7 (C.P. Cumberland Feb. 20, 2013) (citing *Jones v. Cendant Mortg. Corp.*, 396 B.R. 638, 646 (Bankr. W.D. Pa. 2008)). While recognizing that the Trustee had become the real party in interest, the common pleas court determined that the action commenced by the Company must be deemed void *ab initio* given the Company's lack of standing to initiate it. *See id.* at 9 (citing *Thompson v. Peck*, 320 Pa. 27, 30, 181 A. 597, 598 (1935) ("There can be no amendment where there is nothing to amend.")). In this regard, the court stressed that the Trustee must be considered as an entity separate and apart from the Company. *See id.* at 9-10 ("The trustee is not the same entity as the pre-bankruptcy debtor, but is a new entity with his own rights and duties . . .. The trustee acts as the representative of the estate, managing its funds for the benefit of its creditors." (quoting *In re Fid. Am. Fin. Corp.*, 43 B.R. 74, 77 (Bankr. E.D. Pa. 1984), *vacated on other grounds sub nom. In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798 (E.D. Pa. 1986))). For this reason, the court refused to treat the substitution of the Trustee as being merely in the nature of correcting a technical defect.

The common pleas court accepted that amendment in the circumstances presented might be appropriate under federal practice, per Federal Rule of Civil Procedure 17(a)(3), which prescribes that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). *See generally Rousseau v. Diemer*, 24 F. Supp. 2d 137, 143-44 (D. Mass. 1998) (applying Rule 17(a)(3) to permit substitution of a bankruptcy trustee as the plaintiff in an action which had been

commenced by a discharged debtor, reasoning that "the axiom that substitution of the real party in interest to avoid injustice favors allowing the [t]rustee's motion"). The court stressed, however, that the closest analogue in the Pennsylvania Rules of Civil Procedure, Rule 1033, contains no such express prohibition.

On the Trustee's appeal, the Superior Court affirmed in part, vacated in part, and remanded with instructions. *See Morrison Informatics, Inc. v. Members 1ˢᵗ Fed. Credit Union*, 97 A.3d 1233, 1244 (Pa. Super. 2014). Initially, the intermediate court agreed with the common pleas court's determination that both the Company and the Shareholders lacked standing to sue. *See id.* at 1239. As to the Trustee and his motion to amend the caption, however, the panel viewed the salient question as centering upon whether the Company continued to exist as a legal entity after the bankruptcy, not whether its institution of insolvency proceedings had deprived it of real-party-in-interest status relative to claims against the Credit Union. *See, e.g.*, *id.* at 1239 n.2. In this regard, the panel apprehended both that the Company's legal and equitable interests became property of the estate as of the commencement of the bankruptcy proceedings, *see id.* at 1239 (citing *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)), and that actions by and against "persons" or "entities" unrecognized at law are void *ab initio*, *see id.* at 1240-41 (discussing this Court's determination, in *Thompson*, that an action against a deceased person was a nullity).

Nevertheless, the Superior Court noted that the Company did not cease to exist upon its filing of a Chapter 7 petition for relief. *See id.* at 1240 ("Neither [the Credit Union] nor the trial court cites authority for the proposition that a pending bankruptcy petition is the equivalent of death."). Rather, the intermediate court highlighted, the Trustee succeeded to its rights and interests relative to the Credit Union. *See id.* ("The issue here is that the claims stated in the complaint were the property of the bankruptcy

estate rather than that of [the Company]. Thus, the [Trustee], and not [the Company], was and is the real party in interest.").

Given its position that the matter concerned real-party-in-interest status rather than a disability fatal to the action's commencement, the Superior Court rejected the common pleas court's rationale supporting dismissal. Rather, the intermediate court found the issue of whether a bankruptcy trustee may be substituted for a debtor when a case stating claims representing property of the estate was initiated by the debtor was one of first impression in Pennsylvania. In this regard, the court distinguished a decision involving an attempted post-limitations-period addition of a plaintiff (a municipal authority) in an action commenced by a distinct legal entity (a municipality), where the rights asserted were not derivative. *See id.* at 1243-44 (discussing *Borough of Berwick v. Quandel Grp. Inc.*, 440 Pa. Super. 367, 655 A.2d 606 (1995)).

Next, since the issue was a novel one, the Superior Court looked to the approaches of other jurisdictions. Upon such review, it found a tendency to permit a real party in interest to be substituted for an original plaintiff, so long as the modification does not alter the factual allegations asserted or otherwise cause prejudice to the defendant. *See id.* at 1241-42 (citing *Cloud v. Northrop Grumman Corp.*, 79 Cal. Rptr. 2d 544, 554 (Cal. Ct. App. 1998) ("[A]n amendment to substitute in the real party in interest is entitled to relation-back effect."); *Miller v. Campbell*, 192 P.3d 352, 356 (Wash. 2008) (holding that the substitution of a bankruptcy trustee as a plaintiff related back to the original filing of an action by a debtor in bankruptcy); *Rice v. Adam*, 575 N.W.2d 399, 405 (Neb. 1998) (concluding that a district court had erred in dismissing a cause of action without providing the plaintiff the opportunity to amend the pleadings to substitute a bankruptcy trustee as the real party in interest); 67A C.J.S. *Parties* §73 (2014); 59 AM. JUR. 2D *Parties* §318 (2014) ("[C]ourts generally hold that the pleadings

in an action brought by a nominal plaintiff (or one suing for the use of another) may be amended to substitute the real party in interest (or person for whose benefit the suit is brought) at least where the claims and recovery sought were included in the original complaint.")). The intermediate court was persuaded by the rationale applied in such cases and discussed in the treatises.

Additionally, given the derivative nature of the rights and interests administered by the Trustee, the Superior Court did not attribute, to his substitution as the plaintiff, the effect of adding a new party or cause of action. *See Morrison Informatics*, 97 A.3d at 1244. Furthermore, the panel members did not believe that the Credit Union would suffer any surprise as a result of the amendment, since the Company had discussed its bankruptcy in the body of the initial complaint. *See id.*

The Superior Court also discussed Rule of Civil Procedure 1033's liberal policy favoring amendment. *See id.* at 1240 ("Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." (quoting *Hill v. Ofalt*, 85 A.3d 540, 557 (Pa. Super. 2014))). For the above reasons, and in such context, it found that the common pleas court had erred and abused its discretion in denying the amendment. *See id.* at 1241, 1244.

We allowed appeal to consider the merits of the Superior Court's holding in such regard. As the issues presented are ones of law, our review is plenary. The litigants agree that, once it became a Chapter 7 debtor in bankruptcy, the Company surrendered its ability to pursue relief against the Credit Union. *See* 11 U.S.C. §§301, 541(a); *Emoral, Inc.*, 740 F.3d at 879 ("A cause of action that is 'property of the estate' is properly pursued by the bankruptcy trustee because it inures to the benefit of all creditors."). Accordingly, there is no disagreement that the Trustee became the real

party in interest relative to causes of action against the Credit Union. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 & n.9, 103 S. Ct. 2309, 2313 & n.9 (1983) (explaining that property of the estate, subject to administration by a bankruptcy trustee, includes causes of action which accrued prior to the filing of the petition for relief). *See generally* Pa.R.C.P. No. 2002(a) (prescribing, subject to limited exceptions, that "all actions shall be prosecuted by and in the name of the real party in interest"). The parties do dispute, however, the impact of the Company's disability upon the Trustee's ability to enter and maintain the action that had been initiated by the Company.

Presently, the Credit Union references *In re Estate of Sauers*, 613 Pa. 186, 32 A.3d 1241 (2011), for the proposition that a person or entity without authority to bring an action lacks the capacity and standing to sue. *See id.* at 198, 32 A.3d at 1248 (quoting 67A C.J.S. *Parties* §11 (2011)). Consistent with the decision of the common pleas court, the financial institution maintains that an action by or against one lacking the capacity and/or standing to sue is a nullity. *See, e.g.*, Brief for the Credit Union at 20 ("[T]he Trial Court's decision to dismiss was grounded on the straightforward and logical tenet of Pennsylvania law that a valid action at law requires a person or entity which has the legal capacity and right to bring it.").

Along these lines, the Credit Union criticizes the Superior Court's analysis concerning whether the Company "exists" as immaterial to the dispositive circumstance entailing the Company's lack of authority to sue. *See, e.g., id.* at 15 ("The issue is not whether the person or entity 'exists' when attempting to bring the action, but whether it has the legal capacity and right to do so."). According to the Credit Union, no proper plaintiff or cause of action ever was before the common pleas court, and the Superior Court departed from 125 years of consistent jurisprudence -- including the decisions in *Sauers*, *Maxson v. McElhinney*, 370 Pa. 622, 88 A.2d 747 (1952), *Thompson*, and

*Usher v. West Jersey Railroad Co.*, 126 Pa. 206, 17 A. 597 (1889) -- in ruling to the contrary. Alternatively, the financial institution maintains, even if the case caption were amendable in the abstract, such amendment could not be implemented validly, after the expiration of the applicable statutory limitations period, to add the Trustee, a new party entirely separate and distinct from the Company. *See, e.g.*, Brief for the Credit Union at 31-39 (citing, *inter alia*, *Kincy v. Petro*, 606 Pa. 524, 536-37, 2 A.3d 490, 497 (2010), *La Bar v. N.Y., Susquehanna & W. R.R. Co.*, 218 Pa. 261, 264-65, 67 A. 413, 414 (1907), *Borough of Berwick*, and *Prevish v. Nw. Med. Ctr. – Oil City Campus*, 692 A.2d 192, 205 (Pa. Super. 1997) (*en banc*)).

The Trustee's responsive arguments are consistent with the decision of the intermediate court. In particular, the Trustee emphasizes that his interests derive from and are limited according to the Company's predecessor interests. *See, e.g.*, Brief for the Trustee at 8 ("It is well settled that 'the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor.'" (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989))); *id.* at 15 ("The trustee is not asserting new and distinct causes of action and is merely stepping in the shoes of [the Company]."). Accordingly, the Trustee perceives no prejudice to the Credit Union associated with his continuance of the action against it.

At the outset, we observe that a procedural dynamic of this case militates in favor of allowing the amendment to substitute the Trustee for the Company as the plaintiff in the action against the Credit Union, given the liberal policy reflected in the applicable rules. *See* Pa.R.C.P. No. 1033 ("A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading."); *Hoare v. Bell Tel. Co. of Pa.*, 509 Pa. 57, 60, 500 A.2d 1112, 1114 (1985) (explaining that "our rules permit

liberal amendment of the pleadings in order to secure a proper determination of the merits"); *Saracina v. Cotoia*, 417 Pa. 80, 83, 208 A.2d 764, 765 (1965) (noting that amendments to pleadings under Rule of Civil Procedure 1033 "should be granted with liberality so as to secure determination of cases on their merits *whenever possible*" (emphasis in original)). Although our procedural rules do not contain an express analogue to Federal Rule of Civil Procedure 17(a)(3), they certainly do not foreclose the amendment sanctioned by the Superior Court.

Moreover, as a policy matter, consistent with the rationale employed by a number of other jurisdictions, we find good cause to adopt a relation-back approach permitting a bankruptcy trustee to enter into and to maintain an action previously filed by a debtor. Initially, as both parties recognize, federal bankruptcy law is designed precisely to permit a trustee to "stand[] in the shoes" of the debtor. *Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008). Particularly given that the impediment to the Company's own ability to assert claims against the Credit Union arises under federal law, we believe that it is appropriate to afford some deference to the salient federal policies involved. In this regard, a main interest underlying federal bankruptcy law is the fulfilment, as much as possible, of creditor interests. *See, e.g.*, *In re Mitchell*, 357 B.R. 142, 155 (Bankr. C.D. Cal. 2006).

The vindication of the interests of innocent creditors, and the absence of prejudice to defendants, are primary themes in the line of decisions from other jurisdictions which employ a relation-back approach permitting bankruptcy trustees to enter into actions previously initiated by debtors. As explained by one court:

> [T]he plaintiff debtor derived no benefit from filing in his own name rather than that of the trustee; the creditors of the bankrupt would otherwise be deprived of the potential asset; and the defendants would not be prejudiced since they had

> notice of the claim and the issues remained the same except for the addition of the trustee as a party.

*Asmus v. Capital Region Family Practice*, 115 S.W.3d 427, 436-37 (Mo. Ct. App. 2003) (citing *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995)).[5]

We recognize the legitimacy of the Credit Union's observation that recourse to relation-back theory is in tension with language employed in a number of decisions of this Court.  As this Court frequently reiterates, however, the holdings of judicial decisions are to be read against their facts, *see, e.g.*, *Oliver v. City of Pittsburgh*, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011) (citing *Commonwealth v. McCann*, 503 Pa. 190, 195, 469 A.2d 126, 128 (1983)), and there simply is no precedent controlling substitution in a scenario involving a bankruptcy trustee.

More broadly, none of the cases referenced by the Credit Union involve substitution of a real party in interest for a direct predecessor in interest per federal law. Concededly, the Court's precedent has taken a hard line relative to proceedings errantly initiated against deceased persons, *see, e.g.*, *Thompson*, 320 Pa. at 30, 181 A. at 598; *cf. Prevish*, 692 A.2d at 204-05 (reflecting the *en banc* Superior Court's refusal to employ relation-back theory to validate an action improperly commenced against an

---

[5] *Accord  Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 984 (N.D. Ill. 2014) (collecting cases for the proposition that "courts in this [d]istrict and in other circuits have tended to allow for substitution by a trustee in the context of bankruptcy"); *Miller v. Campbell*, 192 P.3d 352, 356 (Wash. 2008) (highlighting that "the substitution changes only the representative capacity of the parties, not the nature of the claims against which [the defendant] must defend"); *Hammes*, 659 N.E.2d at 1030 ("We believe that permitting bankrupt parties to substitute the trustee as the real party in interest is sound public policy[;] [t]he innocent creditors of the plaintiff-debtors should not suffer due to commencing a lawsuit in the name of the plaintiff-debtor rather than in the name of the trustee."). *But see Bibbs v. Cmty. Bank of Benton*, 289 S.W.3d 393, 398-99 (Ark. 2008) (refusing to apply relation-back theory to permit a bankruptcy trustee to enter a civil action as the real party in interest, particularly where such status was not difficult to determine).

estate, in light of an attempted amendment to substitute the estate executor),[6] as well as in scenarios in which plaintiffs have not appeared in the appropriate capacity as required per express statutory commands, *see, e.g.*, *La Bar*, 218 Pa. at 263-65, 67 A. at 413-14; *Maxson*, 370 Pa. at 626, 88 A.2d at 749; *Usher*, 126 Pa. at 216, 17 A. at 599. Nevertheless, the cases are not entirely homogenous in terms of such strictness. *See, e.g.*, *Holmes v. Pa. R.R. Co.*, 220 Pa. 189, 193, 69 A. 597, 598 (1908) ("Without question, a change in the name of partners, or the adding of the names of partners omitted by mistake, or the name of another administrator or trustee, or of a use plaintiff would be allowed after the bar of the statute [of limitations]" where "*[t]he cause of action remain[s] the same,* and no change in the allegations or proofs [is] involved, and the defendant [is] not in the slightest degree prejudiced by it." (emphasis added)).

Moreover, in our considered judgment, permitting substitution of a bankruptcy trustee as the real party in interest does not offend either the terms of, or the policy underlying, the applicable statute of limitations. The operative statute, reposed in Section 5524 of the Judicial Code, merely indicates that a negligence action or proceeding "must be commenced" within a two-year period. 42 Pa.C.S. §5524(2), (7). Facially, the statute is satisfied, since the present action was, in fact, commenced within the salient period.[7]

---

[6] The *Sauers* decision, referenced by the Credit Union, touches on this line of cases, albeit that the Court determined that an estate had legal capacity to implicate legal processes in an attempt to redirect the proceeds of a life insurance policy from a named beneficiary to a named contingent beneficiary. *See Sauers*, 613 Pa. at 199-200, 32 A.3d at 1249. The decision, however, does not have a relation-back dynamic, and thus, we do not consider its general discussion of legal capacity to be particularly useful in addressing the present, discrete scenario which involved relation back on account of directly derivative interests.

[7] We note that this Court has treated statutes of limitations as warranting strict construction, given that their purpose is to prevent stale claims which might prejudice (continued…)

Nor does it alter our analysis that the present action was commenced via writ of summons. Straightforward procedures are available to defendants to redress uncertainties connected with the filing of a writ of summons, principally, in the form of securing the issuance of a rule upon the plaintiff to file a complaint within twenty days. *See* Pa.R.C.P. No. 1037(a). Here, we deem the salient points to be that: an action had been "commenced" in a timely fashion, 42 Pa.C.S. §5524; *see also* Pa.R.C.P. No. 1007 (providing that an action may be "commenced" by the filing of a praecipe for a writ of summons); application of the relation-back doctrine in favor of a bankruptcy trustee is in no way inconsistent with the actual terms of the governing statutory limitations regime; and such application represents the better policy. In this last regard, the approach avoids forfeitures detrimental to creditors that would result from a *per se* approach, even in the absence of prejudice to defendants.

---

(…continued)
the defense. *See, e.g.*, *Bonfitto v. Bonfitto*, 391 Pa. 187, 188, 137 A.2d 277, 278 (1958) (affirming on the basis of a common pleas court's decision). This statement about strict construction is somewhat confounding, since the Statutory Construction Act directs, generally, that statutes not expressly subject to strict construction under this enactment's own terms are to be construed liberally to promote their purposes and in the interests of justice. *See* 1 Pa.C.S. §1928(c). *See generally* Perry Dane, *Jurisdictionality, Time, and the Legal Imagination*, 23 HOFSTRA L. REV. 1, 62 n.188 (1994) (discussing the courts' inconsistent usage of the term "strict construction" in the limitations arena). In context, in this line of cases, it appears that the Court meant that statutes of limitations are to be construed in favor of the defendant's interest in being free from stale litigation (which entails liberal construction in favor of the statute's litigation bar). *See, e.g.*, *Bonfitto*, 391 Pa. at 188, 137 A.2d at 278. In all events, this "strict construction" in favor of a defendant's interests is certainly a tempered application, as, for example, the Court allows for tolling of certain limitations periods via a particular construction of the term "accrual" (of actions), as that term is employed in the statutory delineation of methods of computing periods of limitations generally. *See* *Wilson v. El-Daief*, 600 Pa. 161, 176-77, 964 A.2d 354, 363 (2009) (discussing the prevailing construction of Section 5502(a) of the Judicial Code, 42 Pa.C.S. §5502).

Although we recognize that the interests of a debtor and a trustee may diverge in some respects, we find it most important that trustees' interests are derivative, and accordingly, they generally cannot assert any greater rights as against defendants than debtors could have in the first instance.

In summary, while we depart from the Superior Court's focus on the continued "existence" of the Company after the initiation of insolvency proceedings, we also reject a strict rule foreclosing a relation-back approach to substitution of a bankruptcy trustee for a debtor.[8]  Instead, we hold that relation back in favor of a federal bankruptcy trustee is appropriate, at least where the trustee has acted in a reasonably diligent fashion to secure his or her substitution, and there is no demonstrable prejudice to defendants.[9]

---

[8] Notably, some jurisdictions maintain a determinative distinction between standing and real-party-in-interest status in the application of relation-back theory.  *See generally Tate v. Snap-On Tools Corp.*, No. 90 C 4436, *slip. op.*, 1997 WL 106275, at *4 (N.D. Ill. Feb. 11, 1997) ("The distinction between standing to sue and the real party in interest doctrine is, understandably, often blurred by judges and lawyers."); *Hammes*, 659 N.E.2d at 1029-30 (taking the position that standing refers to injury in fact and real-party-in-interest status concerns whether the person is the true owner of the right sought to be enforced); *Asmus*, 115 S.W.3d at 434-35 (same).  Our present decision, however, rests on narrower grounds centered on the discrete circumstances presented involving the interests of a federal bankruptcy trustee deriving directly from those of a debtor in bankruptcy.

[9] We make no determination here that the Trustee, in fact, has acted in a reasonably diligent fashion, or that prejudice to the Credit Union is absent, as such inquiries are beyond the scope of our present review of the legal issue arising out of the common pleas court's *per se* approach to the dismissal.  *See Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, ___ Pa. ___, 111 A.3d 170 (2015) (*per curiam*) (centering the questions presented on the consequences of the Company's lack of legal authorization to commence a civil action to vindicate causes of action that accrued before it filed its Chapter 7 petition).

The appeal also was not accepted to resolve subsidiary disputes, such as the degree to which the Trustee may have attempted to add additional claims and/or causes of action. *See supra* note 3.  As to such matters, we observe only that the common pleas court's (continued…)

The order of the Superior Court is affirmed and the matter is remanded for further proceedings consistent with this opinion.

Justices Baer, Todd, Donohue and Dougherty join the opinion.

Justice Wecht files a concurring opinion.

―――――――――――――

(…continued)
decision to dismiss the action did not address a number of the challenges otherwise raised in the Credit Union's preliminary objections. *See, e.g.*, Preliminary Objections to Amended Complaint in *Morrison Informatics*, No. 2011-4636 Civ. Term, at ¶63 (asserting that "plaintiffs' claim for breach of implied contract fails to state a claim [and] is merely a restatement of their negligence claim").