IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District,     :
             Petitioner     :
                                  :
             v.                  :
                                  :
Unemployment Compensation     :
Board of Review,                :   No. 366 C.D. 2022
             Respondent    :   Argued: March 7, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                                   FILED: May 19, 2023

Rose Tree Media School District (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) March 21, 2022 order affirming (as modified) the Referee's decision, and granting Martin McGee (Claimant) UC benefits under Section 402.1(5) of the UC Law (Law).[1] The sole issue before this Court is whether Section 402.1(5) of the Law applies in this case.[2] After review, this Court affirms in part and reverses in part.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(5) (relating to claimants who are denied UC benefits on the basis of reasonable assurance, but are not offered an opportunity to perform such service in the second of such academic years or terms). The Referee granted Claimant UC benefits based on Section 402.1(2) of the Law, 43 P.S. § 802.1(2) (relating to reasonable assurance).

[2] In its Statement of Questions Involved, Employer added the additional issue of whether Claimant's return to work on the date expected is a relevant question under Section 402.1(5) of the Law. *See* Employer Br. at 4. This issue is subsumed in Employer's first issue and will be addressed accordingly.

## Facts

On May 23, 2014, Employer hired Claimant as a full-time bus driver. During the summer months, Employer typically has an extended school year (ESY) for special education students and summer school for middle school and high school students who did not pass their classes that year. Claimant worked for Employer during the ESY and summer school sessions in 2014, 2017, 2018, and 2019.

Claimant worked during the 2019-20 academic school year. His last day of work during that year was March 13, 2020. Due to the COVID-19 pandemic (Pandemic) in-person school was suspended and therefore bus drivers were no longer needed after March 13, 2020. Notwithstanding, Employer paid Claimant until the end of the academic school year - June 24, 2020. On May 26, 2020, Employer sent Claimant a letter of reasonable assurance indicating its intent to employ Claimant in the 2020-21 academic school year at terms and conditions not substantially less than those he worked under in the 2019-20 academic school year. Because of the Pandemic, Employer did not operate its 2020 summer school, only its ESY, and bus drivers were not needed for the ESY since it was conducted virtually.

Claimant applied for UC benefits for the week ending June 20, 2020. Students returned to school on August 31, 2020; however, Claimant was furloughed from August 31, 2020 through September 28, 2020, and then returned to work as a bus driver thereafter. UC benefits for the month Claimant was furloughed are not currently before this Court. However, Employer disputes herein Claimant's receipt of UC benefits beginning with the week ending June 20, 2020.

On September 10, 2020, the Harrisburg UC Service Center denied Claimant UC benefits under Section 402.1(2) of the Law because Employer had sent Claimant a notice, wherein it provided Claimant reasonable assurance that he would work the next academic year. Claimant appealed from the UC Service Center's

determination, and a Referee held a hearing on February 22, 2021. On March 17, 2021, the Referee reversed the UC Service Center's determination, concluding that Claimant was not disqualified from receiving UC benefits under Section 402.1(2) of the Law because he was a year-round employee, and, thus, the reasonable assurance doctrine did not apply.

Employer appealed to the UCBR. On March 21, 2022, the UCBR affirmed the Referee's decision (as modified), and granted Claimant UC benefits under Section 402.1(5) of the Law. The UCBR concluded that Claimant was an academic year employee, not a year-round employee. However, since Claimant did not begin working until September 28, 2020, Section 402.1(5) of the Law applies. Specifically, the UCBR ruled that Section 402.1(5) of the Law applies when a claimant does not "commence employment with the employer when expected after a scheduled break in the academic school year due to circumstances beyond [his] control." Reproduced Record (R.R.) at 109a (UCBR Dec. at 3). Employer appealed to this Court.[3, 4]

## Discussion

Employer argues that, under the statute's clear language, Section 402.1(5) of the Law does not apply herein because Claimant was offered the opportunity to perform services as a bus driver during the 2020-21 academic year. Claimant rejoins that Section 402.1(5) of the Law provides an exception to the reasonable assurance doctrine when a school employer provides *reasonable*

---

[3] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[4] On May 12, 2022, Claimant filed a Notice of Intervention. On November 15, 2022, the UCBR filed notice that it would not file a brief.

*assurances* to its non-instructional support staff, but then fails to provide employment following the break.

Initially, Section 402.1 of the Law provides, in relevant part:

> **Benefits based on service for educational institutions** . . . **shall** as hereinafter provided **be payable** . . . ; **except** that:
>
> . . . .
>
> (2) With respect to services performed after October 31, 1983, in any other capacity [than an instructional, research, or principal administrative capacity] for an educational institution, benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms **if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms** [(**reasonable assurance doctrine**)].
>
> . . . .
>
> (5) With respect to an individual who performs services described in clause (2) of this section and who pursuant to clause (2) or (4) of this section is denied benefits for the period between academic years or terms, **such individual if he is not offered an opportunity to perform such service in the second of such academic years or terms shall be paid benefits for the period which commences with the first week he was denied benefits solely by the reason of clause** (**2**) or (4) **of this section**, provided he had filed timely claims for benefits throughout the denial period and was otherwise eligible for benefits.

43 P.S. § 802.1 (emphasis added).

Section 65.161 of the Department of Labor and Industry's (Department) Regulations describes:

(a) For purposes of [S]ection 402.1 of the [L]aw . . . , a contract or **reasonable assurance** that an individual **will perform services** in the second academic period **exists only if both** of the following conditions **are met**:

> (1) The **educational institution** or educational service agency **provides a bona fide offer of employment** for the second academic period to the individual.

> (2) **The economic terms and conditions of the employment offered to the individual for the second academic period are not** *substantially* **less than the terms and conditions of the individual**'**s employment in the first academic period**.

(b) For the purposes of subsection (a), an offer of employment is not bona fide if both of the following conditions exist:

> (1) The educational institution or educational service agency does not control the circumstances under which the individual would be employed.

> (2) The educational institution or educational service agency cannot provide evidence that the individual or similarly situated individuals normally perform services in the second academic period.

(c) For the purposes of subsection (a), **economic terms and conditions of employment include wages**, **benefits**[,] **and hours of work**.

34 Pa. Code § 65.161 (italic and bold emphasis added).

### Section 402.1(2) of the Law

Here, the UCBR concluded:

There is *no dispute* that in May 2020[,] [] [*E*]*mployer sent* [] [*C*]*laimant a letter of reasonable assurance indicating its intent to employ* [] [*C*]*laimant in the same or similar capacity, and at terms and conditions not substantially*

*less, than he worked under during the 2019-20 academic school year.* [] [C]laimant argues that he is essentially a year-round employee because he has worked in previous summers during [] [E]mployer's ESY and summer school sessions. The [UCBR] credits the testimony of [] [E]mployer's witness that [] [C]laimant did so in the summers of 2014, 2017, 2018, and 2019 over [] [C]laimant's contrary testimony. However, the record shows that [] [C]laimant is subject to a [Collective Bargaining Agreement] [(]CBA[)], which defines [] [C]laimant's school year as beginning the third Thursday in August and ending no later than June 30[,] and which does not guarantee summer work for academic year employees. Employees such as [] [C]laimant who wish to work during the summer must sign up and then bid on summer work. There is no penalty for employees such as [] [C]laimant if they do not wish to work during the summer. Therefore, despite [] [C]laimant's prior summer work for [] [E]mployer, the [UCBR] concludes that [] [C]laimant was an academic year employee and not a year-round employee and the reasonable assurance provision in Section 402.1(2) of the Law applies to [] [C]laimant.

R.R. at 108a (UCBR Dec. at 2) (emphasis added). This Court applied the same reasoning in *Rose Tree Media School District v. Unemployment Compensation Board of Review*, 280 A.3d 1125 (Pa. Cmwlth. 2022) (*Rose Tree I*).[5]

In *Rose Tree I*, this Court concluded, in identical factual circumstances:

The . . . testimony evidences that pursuant to the CBA, which governed Employer's and [the c]laimant's employment relationship, [the c]laimant worked from the third Thursday in August to the middle of June. The fact that []he *voluntarily* signed up for summer work does not change the fact that []**he performed "services** [ ] after October 31, 1983, in any other capacity [than an instructional, research, or principal administrative capacity] **for an educational institution**," and **therefore UC benefits shall not be paid** on the basis of such services to any individual for any week which commences during a period between two successive academic years or

[5] This Court decided *Rose Tree I* on August 8, 2022, five months after the UCBR issued its decision in this case.

terms **if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms**.

43 P.S. § 802.1(2) (emphasis added).  The plain language of the statute mandates that [the c]laimant is not entitled to UC benefits.

*Rose Tree I*, 280 A.3d at 1130.  Accordingly, the UCBR properly concluded in the instant appeal that because of the reasonable assurance doctrine Claimant was disqualified from receiving UC benefits under Section 402.1(2) of the Law.[6]

## Section 402.1(5) of the Law

However, the UCBR found that the reasonable assurance doctrine did not apply because Claimant did not start work as expected in "the second of such academic years or terms[.]"  43 P.S. § 802.1(5).  Specifically, the UCBR concluded:

---

[6] The Dissent spends a significant portion of its discussion expressing its dissatisfaction with *Rose Tree I* and arguing against the holding therein.  However, the Pennsylvania Supreme Court has instructed:

> Stare decisis is "a principle as old as the common law itself." *Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, . . . 139 A.3d 1241, 1249 ([Pa.] 2016) (Wecht, J., concurring).  The phrase "derives from the Latin maxim '*stare decisis et non quieta movere*,' which means to stand by the thing decided and not disturb the calm." *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1411 . . . (2020) (Kavanaugh, J., concurring in part). "Without stare decisis, there would be no stability in our system of jurisprudence." *Flagiello v. [Pa.] Hosp.*, . . . 208 A.2d 193, 205 ([Pa.] 1965). . . .  As the United States Supreme Court recently stated[:] "**To reverse a decision**, **we demand a special justification**, **over and above the belief that the precedent was wrongly decided**." *Allen v. Cooper*, ___ U.S. ___, 140 S. Ct. 994, 1003 . . . (2020) (quotation marks and citation omitted).

*Commonwealth v. Alexander*, 243 A.3d 177, 195-96 (Pa. 2020) (emphasis added).

7

Given that the reasonable assurance provisions are meant to exclude claimant[]s from receiving [UC] benefits between a scheduled break in the academic year because they can anticipate those periods of unemployment, the [UCBR] concludes that [Section 402.1](5) [of the Law] provides for [UC] benefits to those who do not commence employment with the employer **when expected** after a scheduled break in the academic school year **due to circumstances beyond their control**. Therefore, because [] [C]laimant was expected to begin his employment again on August 31, 2020, following the summer recess, but was furloughed from August 31, 2020[] through September 28, 2020, the [UCBR] concludes [] [C]laimant is eligible for [UC] benefits for the weeks at issue under Section 402.1(5) [of the Law].

R.R. at 109a (UCBR Dec. at 3) (emphasis added).[7] It is undisputed that Claimant is entitled to UC benefits for the period he was furloughed, i.e., August 31, 2020 through September 28, 2020. The issue before this Court is whether, under Section 402.1(5) of the Law, Claimant qualifies for UC benefits beginning with the week ending June 20, 2020, *the same period for which he was denied UC benefits under Section 402.1(2) of the Law*.

The Pennsylvania Supreme Court has instructed:

The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute. In general, the best indication of legislative intent is the plain language of a statute.

---

[7] The Dissent states that because neither this Court nor the Pennsylvania Supreme Court has interpreted the meaning of Section 402.1(5) of the Law, this Court must view the UCBR's interpretation of the Law with *strong deference*. However, our Supreme Court has held: "A court does not defer to an administrative agency's interpretation of the plain meaning of an unambiguous statute because statutory interpretation is a question of law for the court." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020). Here, as discussed further *infra*, the statute is unambiguous.

8

> **When the words of a statute are clear and free from all ambiguity**, **the letter of it is not to be disregarded under the pretext of pursuing its spirit**. Words of the statute are to be construed according to their common and approved usage.
>
> *Sivick v. State Ethics Comm'n*, . . . 238 A.3d 1250, 1259 ([Pa.] 2020) (emphasis added) (quoting *Kistler v. State Ethics Comm'n*, . . . 22 A.3d 223, 227 ([Pa.] 2011) (cleaned up)); *see generally* Sections 1903 and 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1903, 1921.

*Rose Tree I*, 280 A.3d at 1129. Further, "[t]his Court has consistently held that **courts may not supply words omitted by the legislature** as a means of interpreting a statute. This Court's duty to interpret statutes does not include the right to add words or provisions that the legislature has left out." *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009) (emphasis added; citations omitted).

> In the instant case, Claimant rejoins:
>
> [**T**]**he** [**UCBR's**] **construction** of [Section 402.1(5) of the Law] **as providing retroactive benefits to individuals given reasonable assurance** of a position at the beginning of the school year but, in fact, do not commence employment **at the beginning of the school year**, is consistent with the plain language of the statute.

Claimant Br. at 7 (emphasis added). However, the words "at the beginning of the school year" do not appear in Section 402.1(5) of the Law. Claimant Br. at 7. Rather, Section 402.1(5) of the Law expressly states that such UC benefits will be paid to "such individual if he is not offered an opportunity to perform such service **in the second of such academic years or terms**[.]" 43 P.S. § 802.1(5) (emphasis added). Further, with respect to reasonable assurance, Section 65.161(a) of the Department's Regulations requires that the employer "provide[] a bona fide offer of employment for the second academic period[,]" and that "[t]he economic terms and

9

conditions of the employment offered to the individual for the second academic period [must] not [be] substantially less than the terms and conditions of the individual's employment in the first academic period." 34 Pa. Code § 65.161(a). Section 65.161(c) of the Department's Regulations expressly provides: "[E]conomic terms and conditions of employment include wages, benefits[,] and hours of work." 34 Pa. Code § 65.161(c).

Here, Claimant was "offered an opportunity to perform such service in the second of such academic years or terms," 43 P.S. § 802.1(5), and he does not claim that his "wages, benefits[,] and . . . work" hours offered were less in the second academic year than the first academic year. 34 Pa. Code § 65.161(c). Thus, the work Employer offered in the second academic year was not "substantially less than the terms and conditions of [Claimant's] employment in the first academic period." 34 Pa. Code § 65.161(a)(2).

> Further, this Court has explained:

> [T]he focus of our inquiry is whether the terms and conditions offered were substantially less *at the time the offer was made*, "without the benefit of hindsight." *Glassmire v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 856 A.2d 269, 274 (Pa. Cmwlth. 2004). The reasonableness of an employer's assurance may not be evaluated with the benefit of hindsight. *Lyman v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 463 A.2d 1270, 1272 ([Pa. Cmwlth.] 1983).

*Archie v. Unemployment Comp. Bd. of Rev.*, 897 A.2d 1, 5 (Pa. Cmwlth. 2006) (bold emphasis added). Here, Employer's reasonable assurance letter provided: "Please consider this notice as an offer to return to your position when school resumes for the 2020-2021 school year." R.R. at 74a. Thus, because Employer expected Claimant to return to work when school resumed, Employer's assurance was reasonable at the time it was made. *See Archie*. Indeed, the UCBR stated: "There

10

is no dispute that in May 2020[,] [] [E]mployer sent [] [C]laimant a letter of reasonable assurance indicating its intent to employ [] [C]laimant in the same or similar capacity, and at terms and conditions not substantially less, than he worked under during the 2019-20 academic school year." R.R. at 108a (UCBR Dec. at 2).

The UCBR concluded that Section 402.1(5) of the Law provides UC benefits to those who do not commence employment with the employer "**when expected**" after a scheduled break in the academic school year "**due to circumstances beyond their control**." R.R. at 109a (UCBR Dec. at 3) (emphasis added). Section 402.1(5) of the Law does not contain the words "when expected," *id*., and neither the UCBR nor this Court has the authority to amend the statutory language. *See Rose Tree I*; *Rogele, Inc.* Rather, Section 402.1(5) of the Law expressly mandates that those "**not offered** an opportunity **to perform** such **service in the second of such academic years or terms** shall be paid benefits for the period which commences with the first week he was denied benefits solely by the reason of [Section 402.1](2) [of the Law.]" 43 P.S. § 802.1(5) (emphasis added). Consequently, there is no statutory authority for the UCBR's conclusion.

The UCBR reasoned "that the reasonable assurance provisions are meant to exclude claimant[]s from receiving [UC] benefits **between a scheduled break in the academic year** because they can anticipate those periods of unemployment." R.R. at 109a (UCBR Dec. at 3) (emphasis added). However, that reasoning does not justify providing UC benefits to a claimant for the *entire summer break* when a claimant starts employment *one month* later and is entitled to UC benefits for said month. The fact that Claimant returned to work a month later "due to circumstances beyond [his] control," *id*., is the reason he is entitled to UC benefits

11

for that period,[8] and there is no language in the Law to permit the UCBR or this Court to escalate the receipt of UC benefits for the entire preceding summer. To conclude otherwise would add language to the Law which this Court is not permitted to do, and give Claimant a windfall of more than double the UC benefits to which he is entitled.

As stated above, Claimant was offered "an opportunity to perform such service in the second of such academic years[,]" 43 P.S. § 802.1(5), and, in fact, did work in the 2020-21 academic year, albeit starting a month later than expected. Consequently, Claimant is not eligible for UC benefits for the week ending June 20, 2020, because Section 402.1(5) of the Law does not apply herein. Accordingly, Claimant is not entitled to UC benefits for the summer months for which the UCBR properly found he was disqualified because he received reasonable assurance of employment under Section 402.1(2) of the Law.[9]

---

[8] "Pursuant to Section 3 of the Law, the purpose of the Law is to provide UC benefits for 'persons unemployed **through no fault of their own**.' 43 P.S. § 752 (emphasis added)." *Spivey v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 433, 437 (Pa. Cmwlth. 2020).

[9] The Dissent contends that the ESY program is a *term* for purposes of Section 402.1 of Law, and because Claimant's services as a bus driver were not needed in the summer term of 2020 as they had been for the past three consecutive years, Claimant *was not offered the opportunity to perform such service* in the second of such academic years or terms, and, thus, he is eligible for UC benefits under Section 402.1(5) of the Law. However, the Dissent misreads the statute. Section 402.1(5) of the Law states:

> With respect to an individual who performs services described in clause (2) of this section and who pursuant to clause (2) [(relating to reasonable assurance)] or (4) of this section is denied benefits **for the period** *between* **academic years or terms**, such individual if he is not offered an opportunity to perform such service **in the second of such academic years or terms** shall be paid benefits for the period which commences with the first week he was denied benefits solely by the reason of clause (2) or (4) of this section, provided he had filed timely claims for benefits throughout the denial period and was otherwise eligible for benefits.

12

## Conclusion

For all of the above reasons, the portion of the UCBR's order ruling that Claimant is disqualified from receiving UC benefits under Section 402.1(2) of the Law is affirmed, and the portion of the UCBR's order granting Claimant UC benefits under Section 402.1(5) of the Law is reversed.

_____
ANNE E. COVEY, Judge

43 P.S. § 802.1(5) (bold and italic emphasis added). Here, pursuant to Section 402.1(2) of the Law, Claimant was denied UC benefits for the period **between** academic years, i.e., the summer break. Therefore, Section 402.1(5) of the Law only applies if Claimant was not offered the opportunity to perform such service in the **second of such academic years**. If the Dissent's contention was valid, there would be no need for reasonable assurance in the first instance because there would be no break, i.e., a period between academic years or terms. Thus, whether Claimant was offered work during the ESY program, which occurred **between** two academic years, is irrelevant. Here, as the Dissent acknowledges, Claimant was offered the opportunity to perform such service in the **second of such academic years**. Accordingly, Claimant is not eligible for UC benefits under Section 402.1(5) of the Law.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District,    :
               Petitioner    :
                             :
                             :
           v.                :
                             :
Unemployment Compensation    :
Board of Review,           :   No. 366 C.D. 2022
               Respondent    :

## O R D E R

AND NOW, this 19th day of May, 2023, the portion of the Unemployment Compensation (UC) Board of Review's (UCBR) March 21, 2022 order denying Martin McGee (Claimant) UC benefits under Section 402.1(2) of the UC Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(2), is AFFIRMED, and the portion of the UCBR's order granting Claimant UC benefits under Section 402.1(5), 43 P.S. § 802.1(5), of the Law is REVERSED.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rose Tree Media School District, :
                            Petitioner :
                                      :
                v. :    No. 366 C.D. 2022
                                      :    Argued: March 7, 2023
Unemployment Compensation :
Board of Review, :
                    Respondent :

**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                   **HONORABLE ANNE E. COVEY,** Judge
                   **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: May 19, 2023**

Because I continue to disagree with the majority opinion in *Rose Tree Media School District v. Unemployment Compensation Board of Review*, 280 A.3d 1125, 1131 (Pa. Cmwlth. 2022) (*Rose Tree I*) and believe the Unemployment Compensation (UC) Board of Review's (Board) interpretation of Section 402.1(5) of the UC Law (Law)[1] herein is consistent with the plain language of the Law, respectfully, I would affirm that portion of the Board's Order granting Martin McGee (Claimant) UC benefits beginning with the week ending June 20, 2020, and, therefore, must dissent to the thoughtful Majority Opinion.

Section 402.1(2) and (5) of the Law states, in pertinent part:

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 802.1(5).

Benefits based on service for educational institutions . . . shall as hereinafter provided be payable . . . ; except that:

. . . .

(2) With respect to services performed after October 31, 1983, in any other capacity for an educational institution,[2] benefits shall not be paid on the basis of such services to any individual for any week which commences during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms.

. . . .

(5) With respect to an individual who performs services described in clause (2) of this section and who pursuant to clause (2) or (4) of this section is denied benefits for the period between academic years or terms, such individual if he is not offered an opportunity to perform such service in the second of such academic years or terms shall be paid benefits for the period which commences with the first week he was denied benefits solely by the reason of clause (2) or (4) of this section, provided he had filed timely claims for benefits throughout the denial period and was otherwise eligible for benefits.

43 P.S. § 802.1(2), (5). The Department of Labor and Industry's Regulations further provide, in relevant part:

(a) For purposes of [S]ection 402.1 of the [L]aw (43 P.S. § 802.1), a contract or reasonable assurance that an individual will perform services in the second academic period exists only if both of the following conditions are met:

(1) The educational institution or educational service agency provides a bona fide offer of employment for the second academic period to the individual.

---

[2] Section 402.1(1) of the Law applies to teachers and administrators; other staff, such as Claimant, fall under Section 402.1(2).

(2) The economic terms and conditions of the employment offered to the individual for the second academic period are not substantially less than the terms and conditions of the individual's employment in the first academic period.

34 Pa. Code § 65.161(a).

Section 402.1(2) applies to non-instructional employees of educational institutions who work during the academic year where "there is a reasonable assurance that such individual will perform such services in the second of such academic years or terms." 43 P.S. § 802.1(2). The Pennsylvania Supreme Court has explained that the Legislature's intent in passing Section 402.1 of the Law

> was to eliminate the payment of [UC] benefits to school employees during summer months and other regularly scheduled vacations, on the rationale that such employees are able to anticipate and prepare for these nonworking periods. The [L]aw thus recognizes that these employees are not truly unemployed or suffering from economic insecurity during scheduled recesses.

*Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 983 A.2d 1231, 1244 (Pa. 2009) (citation omitted).

In *Rose Tree I*, the majority held that because the Extended School Year (ESY)/summer program "is clearly and undisputedly 'during a period between two successive academic years[,]' 43 P.S. § 802.1(2)," and the claimant, a bus driver like Claimant here, had "received reasonable assurance that she would return to work the following school year," she was "disqualified from receiving UC benefits under Section 402.1(2) of the Law." *Rose Tree I*, 280 A.3d at 1131. *Rose Tree I* overruled *Department of Education, Scotland School for Veterans' Children v. Unemployment Compensation Board of Review*, 578 A.2d 78 (Pa. Cmwlth. 1990) (*Scotland School*), wherein we had held that evidence of regular summer scheduling for a houseparent at a residential school supported a finding that she was not an academic year

employee but, rather, was employed year round, and, thus, she was not within educational employment exclusion of the Law. *Scotland School*, 578 A.2d at 81-83. I joined in the thoughtful dissenting opinion of the Honorable Lori A. Dumas in *Rose Tree I*. Therein, Judge Dumas reasoned that in light of the substantial evidence establishing that the claimant was a year-round employee, which the Board had accepted, she should not have been disqualified from receiving UC benefits as an employee otherwise subject to Section 402.1(2) of the Law and should have been entitled to the exception recognized in *Scotland School*. *Rose Tree I*, 280 A.3d at 1131 (Dumas, J., dissenting).

While I continue to disagree with the majority's holding in *Rose Tree I* as it concerned the eligibility for UC benefits under Section 402.1(2) of the Law, that holding is not dispositive of the interpretation of Section 402.1(5), a different subsection, in this case. The Board, in this case, found that Rose Tree Media School District (Employer) typically had provided an ESY "for special education students and summer school for" students in middle and high school "who did not pass their classes that year." (Finding of Fact (FOF) ¶ 6.) The Board also determined that "[t]he ESY and summer school are not part of the academic school year." (*Id.* ¶ 7.) "[C]laimant worked for [] [E]mployer during the ESY and summer school sessions in 2014, 2017, 2018, and 2019." (*Id.* ¶ 11.) Due to the COVID-19 pandemic, "[E]mployer did not run its summer school [in 2020], only its ESY, and bus drivers were not needed because [the ESY] was conducted virtually." (*Id.* ¶ 12.)

Although the Board determined Claimant was not employed year round, it reasoned that Section 402.1(5) of the Law was applicable because Claimant did not begin working until September 28, 2020, and it held that Section 402.1(5) applies where a claimant does not "commence employment with the employer when

expected after a scheduled break in the academic school year due to circumstances beyond [his] control." (Board Decision at 3.) The Majority reasons that because Section 402.1(5) of the Law does not contain the terms "when expected," but rather states that those "not offered an opportunity to perform such service in the second of such academic years or terms shall be paid benefits for the period which commences with the first week he was denied benefits solely by reason of [Section 402.1](2) [of the Law.]," the Board's interpretation lacks statutory authority. *Rose Tree Media Sch. Dist. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth, No. 366 C.D. 2022, filed May 19, 2023), slip. op. at 10-11 (*Rose Tree II*) (quoting 43 P.S. § 802.1(2), (5)) (alterations in the original, emphasis omitted). The Majority also finds there is no statutory language in the Law which permits the Board or this Court to find that Claimant was entitled to UC benefits for the summer preceding the start of the academic year in 2020. *Id.* at 11. However, I disagree that to conclude otherwise would require this Court to add language to the Law and result in "a windfall of more than double the UC benefits to which" Claimant would otherwise have been entitled. *Id.* at 11.

Section 1921(b) of the Statutory Construction Act of 1972 directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.§ 1921(b). Thus, "when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning." *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022) (citing 1 Pa.C.S. § 1921(b)). The Pennsylvania Supreme Court has stated it is a "well-settled principle that the interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous." *Est. of Wilson v. State*

*Emps. Ret. Bd.*, 219 A.3d 1141, 1151 (Pa. 2019) (internal quotation marks, brackets, and citations omitted). Neither this Court nor the Pennsylvania Supreme Court has interpreted the meaning of Section 402.1(5); thus, we view the Board's interpretation of the Law with "strong deference." *McCloskey v. Pa Pub. Util. Comm'n.*, 219 A.3d 1216, 1223 (Pa. Cmwlth. 2019) (referencing *Pa. Hum. Rels. Comm'n v. Uniontown Area Sch. Dist.*, 313 A.2d 156 (Pa. 1973) (adopting a "strong deference" standard for reviewing an agency's interpretation of a statute it is charged to enforce)).

Upon reviewing the Board's construction of Section 402.1(5) under the facts presented herein, I would find that the Board's interpretation of Section 402.1(5) is reasonable and consistent with its plain meaning. The Board credited Employer that Claimant is not a year-round employee but, rather, is an academic year employee to whom the reasonable assurance provision in Section 402.1(2) applies. Because Claimant received a reasonable assurance of working in the 2020-21 academic school year, he would typically be ineligible for benefits under Section 402.1(2). (Board Decision at 2.) However, in finding Claimant to be eligible for benefits under the provisions of Section 402.1(5) of the Law, the Board employed the following reasoning, with which I agree:

> Given that the reasonable assurance provisions are meant to exclude claimant[]s from receiving benefits between a scheduled break in the academic year because they can anticipate those periods of unemployment, the Board concludes that subsection (5) provides for benefits to those who do not commence employment with the employer when expected after a scheduled break in the academic school year due to circumstances beyond their control. Therefore, because [] [C]laimant was expected to begin his employment again on August 31, 2020, following the summer recess, but was furloughed from August 31, 2020, through September 28, 2020, the Board concludes [] [C]laimant is eligible for benefits for the weeks at issue under Section 402.1(5).

(*Id.* at 3.)

The "weeks at issue" are those which commenced in June of 2020 and proceeded through the summer. Claimant was denied benefits for the period beginning with the week of June 20, 2020, and ending August 31, 2020. This reading of this section aligns with the remedial nature of the Law which is to allow the anticipation and planning of one's financial life. "Pursuant to Section 3 of the Law, the purpose of the Law is to provide UC benefits for 'persons unemployed **through no fault of their own**.' 43 P.S. § 752 (emphasis added)." *Spivey v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 433, 437 (Pa. Cmwlth. 2020).

In light of the deference we give to the Board's interpretation of the Law, and because I find its interpretation of Section 402.1(5) is sound, I agree it is applicable under the facts presented herein, and I respectfully disagree that Claimant is not eligible for UC benefits for the week ending June 20, 2020. Accordingly, because the Board's determination was not erroneous, I would affirm the Board's holding that Claimant is entitled to UC benefits beginning with the week ending June 20, 2020, under Section 402.1(5).

I additionally believe Claimant is entitled to benefits under Section 402.1(5) under an alternative interpretation of the Section. The plain language of both Section (2) and (5) differentiates between "academic years" and "terms." 43 P.S. § 802.1(2), (5). Under the clear language of Section 402.1(5), the reasonable assurance doctrine is inapplicable where a claimant "is not offered an opportunity to perform" services in the second of such academic years "or terms." 43 P.S. § 802.1(5). The Legislature's decision to distinguish an "academic year" from a "term" suggests that the two are not the same for purposes of this Section. In *Prunty v. Unemployment Compensation Board of Review*, 253 A.3d 349, 357 (Pa. Cmwlth. 2021), this Court held that a summer term at the Community College of Philadelphia did not constitute a "regular term" based on the plain language of Section 402.1(1) of the Law and, therefore, the claimant, a part-time adjunct faculty member at the postsecondary

institution, was not entitled to UC benefits when she did not teach during a summer term either due to a lack of student enrollment or the availability of full-time faculty to teach. Although this Court did not consider the applicability of Section 402.1(5) in *Prunty*, we did not refer to the "academic year" and "summer term" interchangeably throughout our discussion and stressed that the school's catalog expressly differentiated between the "academic year" and the "summer term." *Id*. at 358.

Similarly, the plain language of Section 402.1(5) allows for situations where a school district's calendar is essentially divided into "terms" *i.e.*, semesters, or as in the case before us, an academic school year followed by a necessary ESY or summer school "term" for certain students. Viewed this way, the summer school term, can be seen as "the second of such academic years or terms" for which Claimant was denied benefits after the academic year. 43 P.S. § 802.1(5). I agree with the Majority that Claimant had been offered an opportunity to and did work as a bus driver in the 2020-21 academic school year. However, as the Board recognized, Employer sent Claimant a letter of reasonable assurance in May 2020 indicating it intended "to employ [] [C]laimant in the same or similar capacity" as he had been employed during the 2019-20 academic school year. (Board Decision at 2.)

During that school year, and the three directly preceding it, Claimant had been employed as a bus driver for students enrolled in the ESY and summer school programs. The facts herein establish that the ESY and summer school programs were typical with Employer and these "terms" were essential extensions of the academic year for many students. (FOF ¶¶ 6-7.) Claimant's services as a bus driver were not needed in the summer term of 2020 as they had been for the past three consecutive years due to the unavailability of the summer school program and the placing of the ESY online; therefore, Claimant "was not offered the opportunity to

perform such service," 43 P.S. § 802.1(5), *i.e.* he could not sign up, bid for, and ultimately start work driving a bus for students in the ESY and summer school programs, as he traditionally had done because he had not been offered the opportunity for employment as a bus driver for the ESY and summer school programs as he had been in 2014, 2017, 2018, and 2019, during the summer 2020– the second "term" of that school year.  Thus, Claimant should be paid benefits for the period which commences with June 20, 2020, the first week he was denied benefits following the break (the end of the regular school year) solely by reason of Section 402.1(2) of the Law.  43 P.S. § 802.1(5).

For the multiple reasons stated above, I would affirm the Board's decision and, therefore, I respectfully dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge