**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| JASON YODER | : | No. 43 EAP 2024 |
| | : | |
| | : | Appeal from the Published Order of |
| v. | : | the Superior Court at No. 1605 EDA |
| | : | 2021 entered on January 31, 2023, |
| | : | vacating and remanding the |
| MCCARTHY CONSTRUCTION, INC.; | : | Judgment of the Philadelphia |
| CASTELLI MECHANICAL DESIGN AND | : | County Court of Common Pleas at |
| CATANIA ENGINEERING ASSOCIATES, | : | No. 180500769. |
| INC. | : | |
| | : | ARGUED: March 5, 2025 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AIR CONTROL TECHNOLOGY, INC.; AND | : | |
| RRR CONTRACTORS, INC., | : | |
| | : | |
| | : | |
| APPEAL OF: JASON YODER | : | |

**OPINION**

**JUSTICE BROBSON**                                        **DECIDED: October 23, 2025**

Under the Workers' Compensation Act (Act),[1] as interpreted by this Court for decades, a general contractor that hires a subcontractor to perform work on a jobsite is deemed an "employer" that is secondarily liable to the injured employee of the subcontractor for the payment of compensation under the Act, provided that the subcontractor—the one primarily liable—fails to make payment. Section 302(b) of the Act, 77 P.S. § 462. In exchange for this imposition of secondary liability, the Act's

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-041.4, 2501-2710.

statutory employer provision in Section 203 of the Act, 77 P.S. § 52,[2] extends to a general contractor the same tort immunity afforded to the subcontractor of the injured worker.

This has been the law in this Commonwealth since at least 1930, when the Court issued its decision in *McDonald*, interpreting and applying Section 203 of the Act. Following amendments to the Act in 1974, this Court considered the question of whether those amendments limited the immunity afforded to general contractors under Section 203 to only those instances where the statutory employer actually pays benefits to the injured employee of a subcontractor. *See Fonner*, 724 A.2d at 904. In *Fonner*, this Court held that the 1974 amendments had no effect on the immunity afforded to statutory employers under Section 203, primarily because the General Assembly did not amend the statutory employer provision in the legislation—Section 302(b) of the Act—leaving intact the very language the Court interpreted and applied in *McDonald. See id.* at 906-07.

We accepted this matter to afford Jason Yoder (Yoder) the opportunity to convince this Court that we should overrule long-standing caselaw interpreting Section 203 of the Act and uphold the $5 million civil judgment in his favor and against McCarthy Construction, Inc. (McCarthy), despite McCarthy's assertion that it is immune as Yoder's statutory employer. In so doing, Yoder claims that this Court should overrule *Fonner* and

---

[2] Section 203 of the Act provides:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52; *see McDonald v. Levinson Steel Co.*, 153 A. 424, 426 (Pa. 1930); *Fonner v. Shandon, Inc.*, 724 A.2d 903, 905 (Pa. 1999).

allow an injured employee of a subcontractor to recover for his workplace injury *both* under the Act against his direct employer *and* civilly in a court of law against the general contractor for its negligence *if* the general contractor's secondary liability does not transform into primary liability—*i.e.*, because the subcontractor made payment under the Act. Alternatively, Yoder contends that the general contractor here, McCarthy, either waived the so-called statutory employer defense or was not entitled to its application. As to the former, Yoder urges us to overrule our decision in *LeFlar v. Gulf Creek Industrial Park #2*, 515 A.2d 875 (Pa. 1986), in which we held that the statutory employer defense in Section 203 of the Act is in the nature of a challenge to the common pleas court's subject matter jurisdiction and, therefore, unwaivable. *See LeFlar*, 515 A.2d at 879. As to the latter, Yoder contends that the Pennsylvania Superior Court erred in its assessment that McCarthy established, under the standard set forth by this Court in *McDonald*,[3] that it is entitled to statutory employer immunity in this case.

## I. BACKGROUND

On August 29, 2016, McCarthy, a carpentry company, and the Borough of Norwood (Borough), which is the owner of the Norwood Public Library (Library), entered into a contract pursuant to which McCarthy was to remove and replace the Library's roof

---

[3] This Court in *McDonald* established the following framework in assessing whether a defendant was entitled to statutory employer status under the Act:

> To create the relation of statutory employer under [S]ection 203 of the [A]ct . . . , all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald*, 153 A. at 426.

as well as complete other projects at the Library. (*See* Yoder's Reproduced Record (R.R.) at 166a-185a.) Thereafter, McCarthy and RRR Contractors, Inc. (RRR) entered into a subcontract wherein RRR agreed to perform the roofing on the Library. (*See id.* at 359a-373a.) Yoder worked for RRR. While working on the Library's roof, Yoder fell through an uncovered hole and sustained severe and permanent disabling injuries that will require pain management for the rest of his life.

On May 10, 2018, Yoder filed a complaint for negligence against McCarthy in the Philadelphia County Court of Common Pleas (trial court), which he subsequently amended on September 20, 2018. On February 6, 2020, McCarthy filed an answer and new matter to Yoder's amended complaint, asserting, *inter alia*, all the defenses available to it under the Act which bar or limit Yoder's claims. Yoder moved to strike McCarthy's answer and new matter as untimely. On June 22, 2020, the trial court granted Yoder's motion to strike.

Prior to trial, McCarthy filed a motion *in limine* to preclude Yoder from presenting evidence on liability given McCarthy's belief that McCarthy was Yoder's statutory employer and, therefore, entitled to immunity from civil liability under the Act. Yoder responded with a motion to preclude McCarthy from raising the issue of whether McCarthy was Yoder's statutory employer at trial, contending that McCarthy had waived the statutory employer defense. Following oral argument on the parties' respective motions *in limine*, the trial court denied McCarthy's motion and granted Yoder's motion. The trial court acknowledged that McCarthy's claim that McCarthy was Yoder's statutory employer implicated the trial court's jurisdiction and, thus, was not waivable, but the trial court concluded nonetheless that McCarthy did not establish that it was Yoder's statutory employer. McCarthy, therefore, was not immune from Yoder's common law action in tort for negligence. (*See* R.R. at 824a-825a.) Thereafter, the case proceeded to a jury trial.

Following trial, the jury unanimously determined that McCarthy was negligent and returned a verdict for Yoder in the amount of $5 million. McCarthy filed a post-trial motion, requesting, *inter alia*, a judgment notwithstanding the jury's verdict (JNOV), which the trial court denied. Thereafter, the trial court, *inter alia*, entered judgment in favor of Yoder. McCarthy appealed the judgment to the Pennsylvania Superior Court. At the trial court's direction, McCarthy filed a statement of matters complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, and the trial court responded with an opinion under Pennsylvania Rule of Appellate Procedure Rule 1925(a) (Rule 1925(a) Opinion). While McCarthy raised several issues on appeal to the Superior Court, we address only those which we granted review.

In a precedential decision, a three-judge panel of the Superior Court vacated the trial court's judgment entered in favor of Yoder and remanded the case for the trial court to enter judgment in favor of McCarthy. *Yoder v. McCarthy Constr., Inc.*, 291 A.3d 1 (Pa. Super. 2023). First, the Superior Court addressed McCarthy's claim that the trial court erred in denying its post-trial motion for JNOV as Yoder's statutory employer. Preliminarily, the Superior Court, adhering to our binding precedent in *LeFlar*, concluded that McCarthy did not waive its statutory employer defense for failure to raise it in response to Yoder's amended complaint. As this Court held in *LeFlar*, the Act "deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely plead[ed]." *LeFlar*, 515 A.2d at 879. Rather, "lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte if necessary." *Id.* (citing Pa.R.Civ.P. 1032(2)). Also preliminarily, the Superior Court rejected Yoder's argument that the Superior Court must confine its review to the trial record in assessing whether McCarthy satisfied the five-part *McDonald* test for statutory employer status.

Instead, the Superior Court held that its scope of review included the entire record below, particularly in light of the trial court's decision to grant Yoder's motion *in limine* and preclude McCarthy from presenting any evidence at trial on its statutory employer defense. *Yoder*, 291 A.3d at 13.

With these preliminary matters out of the way, the Superior Court proceeded to assess whether McCarthy satisfied the five-part *McDonald* test. It began with the fifth element (the only part addressed by the trial court in its Rule 1925(a) Opinion), which required McCarthy to show that Yoder was an employee of RRR. On this element, the Superior Court found particularly compelling McCarthy's reliance on record documents pertaining to Yoder's successful claim for workers' compensation benefits under the Act against RRR. Specifically, in a "Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the [Act],"[4] which is dated October 10, 2017, Yoder expressly referred to himself as an employee of RRR. Indeed, independent contractors are not entitled to workers' compensation under the Act. *See Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 330 (Pa. 2000) ("An independent contractor is not entitled to benefits because of the absence of a master/servant relationship. Thus, employee or independent contractor status is a crucial threshold determination that must be made before granting workers' compensation benefits.") (internal citations omitted). The Superior Court, therefore, concluded that Yoder was judicially estopped from now claiming that he was an independent contractor. *Yoder*, 291 A.3d at 15 (quoting *Trowbridge v. Scranton Artificial Limb Co.,* 747 A.2d 862, 864 (Pa. 2000) (OAJC) ("As a general rule, a party to an action is estopped from assuming a position inconsistent with

---

[4] Section 449(b) of the Act, 77 P.S. § 1000.5(b), provides, in relevant part, that "[u]pon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the workers' compensation judge for approval."

his . . . assertion in a previous action, if his . . . contention was successfully maintained.") (citing *Associated Hosp. Serv. of Phila. v. Pustilnik*, 439 A.2d 1149, 1151 (Pa. 1981))).

Although the trial court did not discuss any of the remaining elements of the *McDonald* test in its 1925(a) Opinion, the Superior Court continued its analysis. On the first element, which required McCarthy to show that it was under contract with the Borough, the owner of the Library, the Superior Court considered the contract between those parties. Specifically, the Superior Court identified that, therein, McCarthy was denoted "Contractor" and the Borough the "Owner." Also, under the contract, McCarthy "agree[d] to remove and replace the [L]ibrary's existing roof, and perform various other tasks, for a grand total of $117,590.00." *Yoder*, 291 A.3d at 17-18 (record citation omitted). The Superior Court, thus, determined that McCarthy satisfied the first element.

On the second element, which required McCarthy to show that it occupied or controlled the premises, the Superior Court explained that "[n]ot only did McCarthy occupy the site in that it was doing work on both the roof and inside of the [L]ibrary, it also communicated with the subcontractors to ensure the [L]ibrary project's completion and had responsibility for the safety of the job site." *Id.* at 21. On this element, the Superior Court considered, *inter alia*, the trial testimony of Michael McCarthy (Mr. McCarthy), a McCarthy employee, and Dave Adams (Mr. Adams), who worked for RRR as the foreman on the day of the incident. Mr. McCarthy testified that, on the day of the incident, he and other workers for McCarthy "were patching holes throughout the roof, rotted wood, anything that was damaged from . . . age or water issues. And [they] were also patching three holes from the HVAC units." *Id.* at 20 (record citation omitted). Additionally, Mr. McCarthy testified that McCarthy was doing work inside the Library, including carpentry, painting and ceiling work. Further, Mr. McCarthy "agreed that McCarthy oversaw its subcontractors and scheduled them, and that—with respect to the [L]ibrary project—it

was McCarthy's job to communicate effectively with the subcontractor roofers in order to complete the project." *Id.* Mr. Adams similarly testified that McCarthy was a general contractor on the project, had the responsibility to fill any holes on the roof of the Library, and, in fact, Mr. Adams did tell McCarthy's carpenters to fix the hole through which Yoder fell. *Id.*

On the third element, which required McCarthy to show that it entered into a subcontract with RRR, the Superior Court noted that Yoder did not dispute that McCarthy satisfied this element. "Indeed," the Superior Court relayed that "the record shows that [McCarthy] entered into a contract with RRR to, *inter alia*, '[r]emove and dispose of existing roofing systems down to existing wood roof deck,'" *id.* at 22 (record citation omitted), and, further, in McCarthy's "contract with [the] Borough, McCarthy identified RRR as its subcontractor." *Id.*

Lastly, on the fourth element, which required McCarthy to show that it entrusted a regular part of its business to RRR, the Superior Court observed that McCarthy satisfied this element because the contract between the Borough and McCarthy provided, *inter alia*, that McCarthy "[r]emove and [r]eplace existing roof w[ith] new E.POM [r]oof with tapered insulation," *id.* at 23, and the subcontract between McCarthy and RRR provided that RRR perform the roofing work. (*See* R.R. at 157a (stating that scope of work included removal and disposal "of existing roofing systems down to existing wood roof deck").)

In sum, the Superior Court determined that because McCarthy satisfied each part of the *McDonald* test it was "constrained to conclude that [McCarthy] is [Yoder's] statutory employer, rendering it immune from tort liability." *Id.* at 25.

## II. ISSUES

Yoder's appeal presents three issues. First, we must decide whether to overrule our precedent in *Fonner* "and hold that the General Assembly's 1974 amendments to

the . . . Act, making it mandatory for all employers to obtain workers' compensation coverage, necessitates denying 'statutory employer' status to general contractors unless they in fact have been called on to pay workers' compensation benefits to the injured employee of a subcontractor."[5]  *Yoder v. McCarthy Constr., Inc.*, 318 A.3d 757 (Pa. 2024). Likewise, we are tasked with deciding whether to overrule our precedent in *LeFlar* "in a case such as this where the supposed statutory employer was not called on to pay any workers' compensation benefits."  *Id.*  We then must determine whether "the Superior Court failed to properly apply the facts that must be strictly established under *McDonald* . . . for a general contractor to qualify as a statutory employer in the light most favorable to the plaintiff as verdict-winner, necessitating at the very least a retrial at which the jury would resolve the disputed factual issues concerning whether McCarthy qualifies as Yoder's statutory employer."  *Id.*

---

[5] As part of the 1974 amendments, the General Assembly amended Section 302(b) of the Act, 77 P.S. § 462, which now provides, in relevant part:

> Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant *unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act.*  Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.

(Emphasis added).

### III. DISCUSSION

### A. *Fonner*

### i. Yoder's Arguments[6]

Before this Court, Yoder rehashes the same claim that the appellant in *Fonner* had raised—*i.e.*, that the General Assembly's addition of the "unless" language to Section 302(b) of the Act in 1974 added a sixth element to the *McDonald* test to determine statutory employer status, that being whether the contractor or employer actually paid benefits to the injured claimant. The only novel argument Yoder raises before us now is that the General Assembly's 1974 amendments to the Act "that required subcontractors to maintain workers' compensation insurance" was "further strengthened by the 1993 amendments to the Act requiring general contractors to ensure that all subcontractors possessed workers' compensation coverage for the subcontractor's employees before the general contractor could enter into a subcontract with the subcontractor."[7] (Yoder's Brief (Br.) at 41.)

In support of us overruling *Fonner*, Yoder also relies on criticisms of numerous jurists of the "egregiously unfair result" that *Fonner* necessitates. (Yoder's Br. at 33-34.) While he acknowledges that the General Assembly has not amended the Act in any relevant way since *Fonner*, he nevertheless proclaims that "the time has come for this Court to intervene to finally put an end to the severe injustices that the current statutory employer regime perpetrates on the injured workers of this Commonwealth, their immediate employers, and the workers' compensation insurers for their employers." (*Id.* at 41-42.) Yoder also suggests that overruling *Fonner* will not upset reliance interests

---

[6] The Pennsylvania Association for Justice (PAJ) filed an *amicus curiae* brief in support of Yoder, and we have considered PAJ's arguments in rendering our decision.

[7] Section 302(d) of the Act, 77 P.S. § 462.1, provides: "A contractor shall not subcontract all or any part of a contract unless the subcontractor has presented proof of insurance under this act."

because the Act requires subcontractors to carry workers' compensation coverage for their employees or else be unable to contract with general contractors, *see* 77 P.S. § 462.1, and the Act does not treat statutory employers any differently than they were pre-1974. (*See* Yoder's Br. at 27 (stating prior to 1974 Section 203 "simply meant that general contractors that did not voluntarily obtain workers' compensation coverage for the employees of subcontractors would remain liable for damages at common law to such a subcontractor's employee, as would any subcontractor that had not obtained workers' compensation coverage applicable to its own direct employees.").)

In maintaining that *Fonner* is plainly incorrect and severely unfair, Yoder specifically claims that this Court egregiously misconstrued the General Assembly's 1974 amendments to the Act. In doing so, Yoder suggests that, post-1974, the General Assembly moved the substantive criteria for whether an employer is a "statutory employer" under the Act from Section 203 of the Act to Sections 302(a) and (b) of the Act. (*See* Yoder's Br. at 22 (citing *Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 703 (Pa. Super. 2024) (stating that "[i]f either [S]ection 302(a) or (b) [of the Act] is applicable, a statutory employer 'is immune from suit by an injured worker for common law negligence,' regardless of whether the subcontractor carried workers' compensation insurance that paid the injured worker." (quoting *Fonner*, 724 A.2d at 904)).) Thus, in Yoder's view, if an employer establishes that it is a statutory employer under Section 302(a) or (b), then the statutory employer is immune from common law actions in tort for negligence under Section 203. Yoder also claims that the "antiquated statutory employer defense" harms Pennsylvania construction workers insofar as general contractors, under the current statutory employer regime, are not motivated to ensure the safety of these workers because they do not have to face any consequences for their actions. (Yoder's Br. at 46.) Finally, Yoder suggests that after the General

Assembly's 1974 amendments to the Act, statutory employers are afforded blanket immunity at the expense of subcontractors' and their workers' compensation insurance carriers' right to subrogation. *See* Section 319 of the Act, 77 P.S. § 671.

### ii. McCarthy's Arguments[8]

McCarthy counters that Yoder's effort to convince us to overrule *Fonner* is foreclosed by *stare decisis*, foreclosed by legislative acquiescence, and should be denied on the merits as well. First, McCarthy emphasizes that the jurists who have criticized the result in *Fonner* nonetheless recognize the pedigree of *Fonner* and the many decisions, thereafter, affirming that payment of benefits by a statutory employer is not determinative as to whether that employer is entitled to immunity under the Act. In this way, McCarthy contends that Yoder is asking this Court to "superintend the pace of legislative change." (McCarthy's Br. at 24 n.8.) McCarthy also suggests that the General Assembly's inaction since *Fonner*, a point which Yoder himself acknowledges, evinces the General Assembly's agreement with this Court's interpretation of its statute.[9] *See* 1 Pa. C.S. § 1922(4) (providing that "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"). Further, McCarthy explains that, for the past century, insurance and construction industries "have structured contractual agreements, calculated insurance premiums, and evaluated defense and

---

[8] The Pennsylvania Defense Institute, Philadelphia Association of Defense Counsel, the Insurance Federation of Pennsylvania, the School Districts Insurance Consortium, Delaware Valley Trusts, Pennsylvania Self-Insurers' Association, the National Association of Home Builders of the United States and Pennsylvania Builders Association have filed *amici curiae* briefs in support of McCarthy, and we have considered their arguments in rendering our decision.

[9] McCarthy also points out that neither Yoder nor his allies have gone to the General Assembly to ask for the change to Section 302(b) of the Act that he urges this Court to make.

indemnification obligations" in reliance on this Court's consistent application of statutory employer immunity to general contractors which does not consider payment of benefits, and the change that Yoder asks us to effect would cause enormous and unwarranted implications. (McCarthy's Br. at 18.)

In response to Yoder's claim that the 1974 amendments moved the substantive criteria for statutory employers from Section 203 of the Act to Section 302(a) and (b) of the Act, McCarthy submits that he is wrong. On this point, McCarthy highlights that the General Assembly has not amended Section 203 since 1915. McCarthy also notes that, even assuming Yoder's claim was accurate, it would not assist him in his quest for legislative change. This is because, McCarthy explains, under either Section 203 or Sections 302(a) and (b), payment of benefits by a statutory employer is irrelevant. Similarly, McCarthy protests Yoder's suggestion that his proposed test—payment of workers' compensation benefits—puts general contractors on equal footing as they were prior to the 1974 amendments to the Act. Instead, McCarthy clarifies that pre-1974, whether general contractors were entitled to immunity under the Act was not determined based on whether they paid workers' compensation benefits but, rather, whether they opted to carry coverage under the Act. To that end, McCarthy suggests that the only relevant change effected by the General Assembly's 1974 amendments to the Act is that employers are now mandated to carry coverage under the Act; if the employer does not, then it cannot avail itself of the defenses under the Act. McCarthy also implores that the fact that its liability never transformed from secondary to primary should not cause McCarthy to be penalized for securing payment of compensation for RRR's employees— *i.e.*, complying with its obligation under the Act—to reap the benefit of immunity. In this sense, McCarthy faults Yoder for not appreciating the continuing nature of a statutory employer's reserve liability. Specifically, McCarthy suggests that there are several

instances where a statutory employer could be called on in the future to pay workers' compensation benefits to an injured employee where the primarily liable employer is no longer able to pay due to, *i.e.*, insolvency.

Finally, McCarthy contends that Yoder's claim that statutory employer immunity deprives, *inter alia*, a subcontractor of its right to subrogation against general contractors, ignores that statutory employers are subjected to increased premiums given that such premiums "are typically calculated based on the number and/or compensation of an insured's employees." (*Id.* at 43.) McCarthy also suggests that depriving statutory employers of immunity under the Act based on nonpayment of workers' compensation benefits would create "sweeping new defense and indemnification obligations of subcontractors," where subcontractors "typically execute contracts that waive their workers' compensation immunity." (*Id.* at 44.) In addition, "general contractors will pursue their contractual rights against subcontractors and their insurers," which "would require subcontractors to pay compensation benefits, *plus* indemnify general contractors for tort recoveries obtained by their own employees, *and* pay higher insurance premiums." (*Id.* (emphasis in original).) According to McCarthy, Yoder's proposed change to the statutory employer regime would inflict harm on subcontractors' interests. McCarthy further emphasizes that there is no evidentiary support for Yoder's claim that depriving general contractors of immunity under the Act would incentivize safety. On this point, McCarthy notes that, regardless of immunity under the Act, it remains subject to the Occupational Safety and Health Administration's (OSHA) regulations and its fines for any violation thereof.

### iii. Yoder's Reply

In response, Yoder challenges McCarthy's reliance on Section 1922(4) of the Statutory Construction Act of 1972 as misplaced because the 1974 amendments did not

add "language used" in Section 203 of the Act to a "subsequent statute[] on the same subject matter." 1 Pa. C.S. § 1922(4). In fact, Yoder acknowledges, the 1974 amendments left Section 203 undisturbed. To that end, Yoder submits that "[i]t was this Court's . . . decision in *Fonner* that attributed a manifestly different meaning to [Section] 203 in the aftermath of the 1974 amendment than [Section] 203 was understood to have before those amendments occurred." (Yoder's Reply Br. at 25.) Yoder also insists that McCarthy's claim that overruling *Fonner* would harm subcontractors is wrong, relying on Section 303 of the Act, 77 P.S. § 481, providing, in relevant part, that an employer is not liable for damages, contribution or indemnity in an action at law by an injured employee against a third party that caused an injury or death unless expressly provided for in a written agreement. In addition, Yoder notes that legislative acquiescence, on which McCarthy relies in support of affirming *Fonner* is discretionary— not mandatory. Yoder further refutes McCarthy's reliance on Sections 305(a) and (d) of the Act, 77 P.S. § 501(a), (d)—requiring "[e]very employer" to insure payment of compensation and providing if "[a]ny employer" does not, then the injured employee may proceed under Act or in suit at common law for damages—because, according to Yoder, McCarthy is not an "employer" given it did not pay workers' compensation benefits to Yoder. Lastly, Yoder criticizes McCarthy's suggestion that a general contractor's liability to an injured employee of a subcontractor is not "finite," proclaiming that it is a "highly unrealistic scenario" that a general contractor would be called on in the future to pay benefits to the injured employee. (Yoder's Reply Br. at 17.)

### iv. Analysis

"*Stare decisis* is 'a principle as old as the common law itself,'" *Commonwealth v. Alexander*, 243 A.3d 177, 195 (Pa. 2020) (quoting *Morrison Informatics, Inc. v. Members 1st Fed. Credit Union*, 139 A.3d 1241, 1249 (Pa. 2016) (Wecht, J., concurring)) (emphasis

added), deriving itself "from the Latin maxim '*stare decisis et non quieta movere*,' which means to stand by the thing decided and not disturb the calm." *Id.* (quoting *Ramos v. Louisiana*, 590 U.S. 83, 115 (Kavanaugh, J., concurring in part)). In the absence of our commitment to precedent, our system of jurisprudence would lack stability. *Id.* Indeed, *stare decisis* achieves "invaluable and salutary principles," *Stilp v. Commonwealth*, 905 A.2d 918, 966-67 (Pa. 2006), which include "protect[ing] the interests of those who have taken action in reliance on a past decision," "reduc[ing] incentives for challenging settled precedents," and "saving parties and courts the expense of endless relitigation." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 263-64 (2022) (quoting *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015)). In addition, "*[s]tare decisis* simply declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Burke v. Pittsburgh Limestone Corp.*, 100 A.2d 595, 598 (Pa. 1953) (emphasis added). That is not to say, however, that *stare decisis* is "an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp*, 905 A.2d at 967.

This Court has also recognized that overruling precedent "demands a special justification—over and above the belief that the precedent was wrongly decided—in matters involving statutory, as opposed to constitutional, construction." *Commonwealth v. Reid*, 235 A.3d 1124, 1168 (Pa. 2020). Particularly, "[i]n cases resolved upon statutory interpretation, *stare decisis* does implicate greater sanctity because the legislature can prospectively amend the statute if it disagrees with a court's interpretation." *Commonwealth v. Doughty*, 126 A.3d 951, 955 (Pa. 2015). Similarly, once a statutory construction is made and followed it "should never be altered upon the changed views of new personnel of the court." *In re Burtt's Est.*, 44 A.2d 670, 677 (Pa. 1945). "Among

appropriate considerations in assessing the wisdom of departing from precedent are 'workability,' 'the antiquity of the precedent, the reliance interests at stake, and . . . whether the decision [is] well[-]reasoned.'" *Morrison Informatics, Inc.*, 139 A.3d at 1250 (Wecht, J., concurring) (some alterations in original) (internal citations omitted).

In the present case, Yoder does not advance a special justification to overrule *Fonner*. Instead, he, reiterates the same claims that the appellant in *Fonner* raised and this Court rejected. *See Fonner*, 724 A.2d at 906 ("Appellant argues that the 'unless' language which was part of the 1974 amendment to Section 302(b) [of the Act] implicitly amended Section 203 [of the Act] by adding a sixth element to the *McDonald* statutory employer test: whether the contractor or employer actually paid benefits to the injured claimant.") Because this Court already considered, and rejected, Yoder's arguments in *Fonner*, Yoder must do more than proclaim *Fonner* is wrong to prevail now. In other words, it is not enough for Yoder to rehash the appellant's arguments from *Fonner*. Yet, that is precisely what he does.

The only novel argument Yoder raises before us now is that the General Assembly's 1993 amendments to the Act further strengthened the 1974 amendments mandating that employers maintain workers' compensation insurance for their employees. In 1993, the General Assembly added Section 302(d) of the Act, which provides that "[a] contractor shall not subcontract all or any part of a contract unless the subcontractor has presented proof of insurance under this act." 77 P.S. § 462.1. Not only does Yoder fail to explain how Section 302(d) furthers his position that a statutory employer must pay workers' compensation benefits to an injured worker to qualify as a "statutory employer," but he also fails to explicate how the addition of Section 302(d) advances a special justification to overrule *Fonner*. In our view, Yoder's reliance on Section 302(d) actually hinders his point. This is because, clearly, the General Assembly

has demonstrated its ability to enact changes to the Act to align with its intent. Yet, since this Court decided *Fonner* over two decades ago, the General Assembly has done nothing to suggest that it disagrees with our interpretation of Section 302(b) of the Act.[10] What is more, Yoder seems to suggest that a special justification exists to overrule *Fonner* because several jurists have criticized *Fonner's* result thereby compelling us to overrule it. Yoder is wrong. Even those learned justices acknowledged that the courts remain duty bound to the General Assembly's legislative pronouncements.

For example, in his concurring opinion in *Travaglia v. C.H. Schwertner & Son, Inc.*, 570 A.2d 513 (Pa. Super. 1989), *appeals denied*, 590 A.2d 758, 759 (Pa. 1990), the late Judge Melinson opined that "Sections 203 and 302 of the . . . Act have outlived their usefulness," *Travaglia*, 570 A.2d at 518 (Melinson, J., concurring), and that, under those sections "general contractors are completely insulated from tort liability for negligent or grossly negligent acts." *Id.* at 519 (Melinson, J., concurring). "Furthermore," Judge Melinson remarked "as is *clear from their language*, *these sections of the . . . Act* 'operate to relieve [the general contractor] from payment of [workmen's] compensation by placing that responsibility upon the subcontractor.'" *Id.* (quoting *Capazzoli v. Stone & Webster Eng'g Corp.*, 42 A.2d 524, 526 (Pa. 1945)) (emphasis added) (alterations in original). Thus, Judge Melinson suggested "the effect of these abhorrent *legislative pronouncements* is to absolve a general contractor of any and all responsibility for

---

[10] Legislative acquiescence is "a term of art for what courts have called the 'special force' of *stare decisis* in matters of statutory construction, which follows from the fact that the [L]egislature is 'free to correct any errant interpretation of its intentions' by amending the statute in question." *Klar v. Dairy Farmers of America, Inc.*, 300 A.3d 361, 376-77 (Pa. 2023) (quoting *Hunt v. Pa. State Police*, 983 A.2d 627, 638 (Pa. 2009) (other citations omitted)). Furthermore, "the 'definitive' example of legislative acquiescence would be legislative silence in response to a series of decisions by this Court," which is the Court of last resort in Pennsylvania. *Commonwealth v. Rosario*, 294 A.3d 338, 355 (Pa. 2023). Like *stare decisis*, the principle of legislative acquiescence "is not absolute," and our application thereof "is discretionary, not mandatory." *Klar*, 300 A.3d at 377.

negligent or grossly negligent conduct without even imposing upon that contractor the corresponding duty to compensate an injured employee under" the Act, which runs counter to the fundamental concept of the judicial system that is "based upon the concept that individuals and corporations alike will be held accountable for their mistakes and indiscretions." *Id.* at 519-20 (Melinson, J., concurring) (emphasis added).

Also, in *Oster v. Serfass Construction Company, Inc.* (Pa. Super., No. 1052 EDA 2021, filed Aug. 17, 2022), then-Judge, now-Justice McCaffery, filed a concurring opinion wherein he agreed with the majority of the Superior Court to affirm the trial court's grant of summary judgment in favor of the statutory employer. Then-Judge McCaffery did, however, express his strong disagreement "with the manner in which the statutory employer doctrine has been wielded by negligent general contractors to shield themselves from civil liability when they have not taken any steps to ensure the employees of their subcontractors will be adequately compensated (or even insured) for on-the-job injuries they sustain as a result of that negligence." *Oster*, slip op. at 2 (McCaffery, J., concurring). Notwithstanding, then-Judge McCaffery acknowledged that the Superior Court was "*bound by existing, controlling statutory and* case law to the contrary." *Id.* (emphasis added).

Furthermore, and, most notably, seventeen years after *Fonner* was decided, Justice Nigro altered his stance, explaining that "[a]lthough [he] dissented in *Fonner* . . . because [he] believed that a statutory employer should be required to show that it assumed responsibility for providing workers' compensation to the injured employee before statutory immunity may attach, [he] *recognize[d] that our current law does not impose such a requirement.*" *Peck v. Delaware Cnty. Bd. of Prison Inspectors*, 814 A.2d 185, 192 (Pa. 2002) (Nigro, J., concurring) (emphasis added).

Most recently, in *Patton v. Worthington Associates, Inc.*, 89 A.3d 643 (Pa. 2014), the late Chief Justice Baer explicitly called on the General Assembly to eliminate blanket immunity for statutory employers. In doing so, Chief Justice Baer explained that, "*[g]iven the clear and unambiguous language of the relevant provisions of the . . . Act . . . as consistently interpreted by decades of precedent from this Court*," he was constrained to join the majority's opinion, concluding that there were no material facts in question that Worthington Associates, Inc. was Patton's statutory employer. *Patton*, 89 A.3d at 650 (Baer, C.J., concurring) (emphasis added). Chief Justice Baer opined, however, that "[a]s has been written several times over the past thirty-five years . . . the mandatory nature of workers' compensation has rendered the statutory employer doctrine obsolete." *Id.* "Nevertheless," Chief Justice Baer acknowledged, "*it remains undisturbed within Pennsylvania's statutory scheme as an irrational relic of a bygone era.*" *Id.* at 650-51 (emphasis added). Chief Justice Baer, thus, urged the General Assembly to eliminate immunity for general contractors under the Act that do not pay compensation to the injured employee of the subcontractor thereby "thwarting a victim's right to recover from a tortfeasor[] and an innocent subcontractor-employer's right to recoup workers' compensation payments through subrogation[,] while adversely impacting worker safety by eliminating the traditional consequences (money damages) when a general contractor's negligence harms a subcontractor's employee." *Id.* at 651.

Notwithstanding jurists' qualms with *Fonner's* result and explicit calls that the General Assembly act, that policy-making branch has enacted no change to suggest that our decades-old interpretation of the Act is contrary to its intent. Indeed, it seems, for that very reason, Yoder has turned to this Court again to effect the change that the General Assembly has not yet undertaken—at least not for the last twenty-six years and counting. We will not be pressured to backpedal on our interpretation of Section 302(b) in *Fonner*

simply because the General Assembly has not acted. *See In re Burtt's Est.*, 44 A.2d at 677 (explaining that once statutory construction is made and followed it "should never be altered upon the changed views of new personnel of the court"). This is especially true in this case involving statutory interpretation where *stare decisis* "implicate[s] greater sanctity because the legislature can prospectively amend the statute if it disagrees with a court's interpretation." *Doughty*, 126 A.3d at 955.

In sum, while some in the judiciary have concluded that the immunity afforded to a statutory employer under the Act may be an idea of the past that is no longer useful or equitable, that does not amount to a special justification to overrule *Fonner*. Indeed, this Court's role is limited in the sense that it cannot change the legislative scheme under which that immunity exists. Simply stated, we lack the ability to rewrite the Act in a way to reflect the change that so many judges and Justices have urged the General Assembly to make as early as 1999 when this Court decided *Fonner*. *See Commonwealth v. Hopkins*, 117 A.3d 247, 261 (Pa. 2015) (recognizing that "[i]t is beyond our province to, in essence, rewrite [the statute] to transform" it in a way that is not in accord with General Assembly's intent).

We, therefore, conclude that, because Yoder does not advance a special justification for us to overrule *Fonner*, we are constrained to adhere to the principles of *stare decisis* and, accordingly, reaffirm this Court's decision in *Fonner* that a general contractor remains entitled to "historic immunity as a 'statutory employer' from suit for common law negligence . . . even though the subcontractor which directly employed the injured worker carried workers' compensation insurance which paid benefits for the worker's injuries." *Fonner*, 724 A.2d at 907. Further, we again direct Yoder and other proponents of changes to the Act to the appropriate policy-making branch—the General Assembly. *See Patton*, 89 A.3d at 650 (stating that any claims *Fonner* "reflects poor

public policy is at this point best expressed to the Legislature," and "[t]he courts cannot abide the sort of distortions which occurred here as a counterbalance to previous decisions with which some may disagree").

### B. *LeFlar*

### i. Yoder's Arguments

In an effort to convince us to overrule *LeFlar*, Yoder, again, implores that payment of benefits is the litmus test to determine whether a statutory employer can waive immunity afforded to it under the Act. According to Yoder, if a general contractor does not pay workers' compensation benefits to the injured employee of the subcontractor, then, the general contractor can waive immunity under the Act to the employee's common law action in tort for negligence by failing to timely plead it. Yoder also attempts to distinguish the present case from *LeFlar* given the procedural history of the latter. Specifically, in *LeFlar*, this Court remanded the matter to the court of common pleas to determine if the claimant was an employee or independent contractor, which was indicative of whether the claimant had a viable claim under the Act. Contrarily, here, Yoder submits that "the workers' compensation adjudication system" would never have jurisdiction over a workers' compensation claim filed by Yoder against McCarthy because RRR secured payment of workers' compensation benefits as required by the Act. (Yoder's Br. at 53.) In this sense, Yoder maintains that a court of common pleas' jurisdiction over a common law action in tort for negligence "is only relinquished when an employer actually pays workers' compensation no-fault benefits." (*Id.* at 53-54.) Yoder further perfunctorily attempts to analogize immunity afforded to statutory employers under the Act to sovereign immunity provided to Commonwealth parties under what is commonly known as the Sovereign Immunity Act.[11] According to Yoder, immunities are

---

[11] 42 Pa. C.S. §§ 8521-8527.

not ordinarily treated as jurisdictional bars but, rather, may entitle a proponent to judgment in his favor. Lastly, Yoder relies on Section 305(d) of the Act, which provides, in relevant part, that, "[w]hen any employer fails to secure the payment of compensation under this act as provided in sections 305 and 305.2, the injured employe . . . may proceed either under this act or in a suit for damages at law as provided by article II." 77 P.S. § 501(d). Under Yoder's interpretation of Section 305(d), a direct employer is not entitled to immunity under the Act unless it *pays* workers' compensation benefits to an injured employee. Thus, Yoder insists that "it makes absolutely no sense whatsoever" to allow a general contractor, that is a supposed statutory employer, that did not pay workers' compensation benefits to the injured employee of the subcontractor, to reap the benefit of immunity under the Act. (Yoder's Br. at 56.)

### ii. McCarthy's Arguments

In response, McCarthy maintains that we must reaffirm *LeFlar*. First, McCarthy reiterates that, for almost a century, under our precedent, statutory employers have been immunized from liability at common law regardless of whether or not they pay workers' compensation benefits to an injured worker. McCarthy also claims that Yoder's proposed test—*i.e.*, payment of benefits—is unworkable particularly where he proposes the same test for immunity and waiver. To do so, McCarthy submits, would render waiver irrelevant because, for example, a general contractor that does not pay workers' compensation benefits to the injured employee would not qualify as a "statutory employer" under the Act. McCarthy further opines that to overrule *LeFlar* would be to "unravel bedrock principles of both workers' compensation immunity" and waiver insofar as "traditionally[]immune individuals and entities . . . would be deprived of immunity." (McCarthy's Br. at 48); *see also* (McCarthy's Br. at 28 n.11 (citing cases where employers were immune from common law tort action notwithstanding that employees' injuries were

not compensable under Act). Likewise, McCarthy notes that this Court has relied on *LeFlar* to further develop our jurisprudence proclaiming that lack of subject matter jurisdiction is not a waivable defense.

### iii. Analysis

Similar to his first issue, Yoder requests, in light of the General Assembly's 1974 amendments to the Act, that we overrule *LeFlar* to the extent that a statutory employer *can* waive immunity under the Act *if* the statutory employer does not actually pay workers' compensation benefits to an injured worker. In *LeFlar*, this Court held that the Act "deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely plead[ed]." *LeFlar*, 515 A.2d at 879. Thus, "[t]he lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte if necessary." *Id.* (citing Pa.R.Civ.P. 1032(2)). Because Yoder is asking us to overrule our prior precedent, the principles of *stare decisis*, discussed above, are equally applicable to our disposition of this issue. We briefly recall that, to overrule precedent, a special justification is required. In an effort to unveil a special justification, relevant considerations include "workability, the antiquity of the precedent, the reliance interests at stake, and . . . whether the decision [was] well[]reasoned." *Morrison Informatics, Inc.*, 139 A.3d at 1250 (Wecht, J., concurring) (internal quotations and citations omitted). In addition, in the area of statutory interpretation, "the considerations for *stare decisis* are afforded special force in the area of statutory interpretation[,] resulting in courts adhering to a more strict application of the doctrine in" that context. *Allegheny Reprod. Health Ctr. v. Pa. Dep't of Hum. Servs.*, 309 A.3d 808, 850 (Pa. 2024) (internal quotations omitted) (alterations in original).

Here, Yoder does not offer us any special justification to overrule *LeFlar*. Instead, he, once more, proclaims that in the aftermath of the General Assembly's 1974 amendments to the Act, whether a contractor or employer qualifies as a statutory employer requires the contractor or employer to pay workers' compensation benefits to an injured worker. We also recognize Yoder's request that we overrule *LeFlar* for what it is—a last ditch effort to sway us to change the law or otherwise effect legislative change that the General Assembly clearly does not deem fit—*i.e.*, by necessitating contractors or employers to pay workers' compensation benefits to injured workers to achieve statutory employer status. We will not bite. Even where "*[s]tare decisis* is at its weakest in the context of constitutional interpretation," this Court has recognized that "[t]o ensure certainty and finality, overturning a decision requires a 'special justification, *over and above the belief that the precedent was wrongly decided.*'" *Id.* (quoting *Alexander*, 243 A.3d at 196-97) (emphasis added). Furthermore, this Court has maintained that prior decisions "must be accepted as settled law, if the doctrine of *stare decisis* is to have any binding force in determining questions involving constitutional construction in our state." *Gerlach v. Moore*, 90 A. 399, 400 (Pa. 1914). Thus, a majority opinion from this Court "is precedent as to different parties in cases involving substantially similar facts, pursuant to the rule of *stare decisis.*" *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996). "This remains true regardless of changes in the composition of the Court." *Alexander*, 243 A.3d at 198 (Baer, C.J., concurring). In this way, the rule of *stare decisis* declares certainty. *Burke*, 100 A.2d at 598. Thus, we conclude that Yoder's mere disagreement with this Court's decision in *LeFlar* falls far short of a "special justification" to overrule that decision. Nor are we convinced that Yoder's attempt to analogize

statutory employer immunity to sovereign immunity offers us a "special justification" to overrule *LeFlar*.[12]

Accordingly, we reaffirm our holdings in *LeFlar* that the Act "deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers" and "[t]he lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court sua sponte if necessary." *LeFlar*, 515 A.2d at 879 (citing Pa.R.Civ.P. 1032(2)). This is true even where a general contractor remains liable to the injured employee of a subcontractor in a reserve status.

## C. *McDonald* Test

### i. Yoder's Arguments

Yoder first claims that McCarthy could not satisfy the first element of the *McDonald* test because the evidence shows that the Borough—not McCarthy—was the general contractor on the Library project. Yoder identifies that the contract between the Borough and McCarthy describes McCarthy's work on the Library project as being limited to carpentry and roofing work. For other areas of work, however, such as HVAC and electrical, the Borough contracted with other contractors. Second, Yoder claims that the evidence before the jury—namely testimony from Mr. McCarthy that, if he had seen the hole on the roof through which Yoder fell, then he would have immediately covered it—proves that McCarthy never occupied or controlled the premises on which the project took

---

[12] Yoder's attempt is frail. Nevertheless, Yoder arguably waived this claim by failing to develop the issue in a fashion capable of review. *See Banfield v. Cortes*, 110 A.3d 155, 168 n.11 (Pa. 2015) (stating, *inter alia*, that "[w]here an appellate brief . . . fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (quoting *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014)). In his brief, Yoder baldly asserts that "[o]rdinarily immunities from liability are not treated as jurisdictional bars to a court's ability to hear and decide a lawsuit. Rather, they may entitle the defendant to judgment in its favor when properly invoked." (Yoder's Br. at 54.)

place. Thus, Yoder maintains that McCarthy could not satisfy the second element of the *McDonald* test. (*See* Yoder's Br. at 59-60.)

Lastly, Yoder contests that McCarthy satisfied the fourth element, highlighting that roofing work is not a regular part of McCarthy's business. Instead, Yoder characterizes McCarthy as a "mom-and-pop carpentry subcontractor." (Yoder's Br. at 60.) Yoder also explains that "the evidence at trial established that McCarthy is not a roofing company; it does drywall, it does flooring, it never does any roofing work, and it fails to hire roofers as a regular part of its business." (*Id.*) Further, Yoder claims that the Superior Court nullified the fourth element of the *McDonald* test by concluding that McCarthy satisfied this element by contracting with the Borough to perform roofing work and, thereafter, subcontracting with RRR to perform that work. According to Yoder, such an understanding of the fourth element requires no more than what the first and third elements of the *McDonald* test require—*i.e.*, that an employer be under contract with an owner or one in the position of an owner and that a subcontract be made by the general contractor.

For all these reasons, Yoder submits that, at minimum, the Superior Court should have remanded this case for a retrial at which a jury could have resolved the evidentiary disputes surrounding whether McCarthy "strictly and literally satisfied" the *McDonald* test. (Yoder's Br. at 65.)

### ii. McCarthy's Arguments

In response, McCarthy maintains that the Superior Court properly found that it satisfied the five-part *McDonald* test. On the first element, McCarthy cites to testimony of Yoder's expert wherein he identified McCarthy as the general or prime contractor on the Library project. (*See* R.R. at 916a, 920a.) Similarly, on the second element, McCarthy relies on Yoder's complaint wherein he alleged that McCarthy "managed,

supervised, and/or controlled the construction including of the roof." (McCarthy's Br. at 52 (quoting R.R. at 113a).) McCarthy also recalls the deposition and trial testimony of several witnesses which confirmed that McCarthy "undertook 'coordination' of all trades on the project;" "coordinated work through its on-site supervisor;" and that McCarthy's "employees were regularly present on the roof." (*Id.* at 53 (citing R.R. at 337a, 346a-347a, 381a, 420a, 426a).) Furthermore, McCarthy highlights that Yoder and his expert acknowledged at trial that McCarthy "was responsible for safety on the jobsite, including the very hole through which [he] fell." (*Id.* (citing R.R. at 806a, 815a, 941a).)

On the fourth element, McCarthy claims that roofing work is part of its regular business. For support, McCarthy recalls Mr. McCarthy's testimony that he worked for McCarthy for over twenty-five years and that McCarthy has served as the general contractor on a hundred construction projects and has routinely hired subcontractors to perform roofing work. McCarthy suggests that Yoder's argument that a general contractor itself must regularly perform the work that it subcontracts overlooks that general contractors would have no reason to subcontract work that they regularly perform. Alternatively, McCarthy insists that there is no evidence to support Yoder's claim that "the common construction industry practice of subcontracting a portion of a general contractor's contracted-for work fails to satisfy the fourth *McDonald* element." (McCarthy's Br. at 57.) Here, McCarthy maintains that it satisfied the fourth element, relying on the contracts between the Borough and McCarthy and between McCarthy and RRR.

### iii. Analysis

We must consider whether the Superior Court properly remanded for the trial court to enter JNOV in McCarthy's favor based on the Superior Court's application of the *McDonald* test to the circumstances of this case. Preliminarily, we note that Yoder only

challenges the Superior Court's application of the first, second, and fourth elements of the *McDonald* test, and, therefore, our analysis is limited to those disputed elements.[13] (*See* Yoder's Br. at 18 ("With regard to three of the five *McDonald* [elements] in this case, . . . McCarthy failed to strictly and unequivocally satisfy its entitlement to statutory employer status.").)

"An appellate court will reverse the trial court's decision to grant or deny JNOV only when it finds an abuse of discretion or an error of law." *Menkowitz v. Peerless Publ'ns, Inc.*, 211 A.3d 797, 804 (Pa. 2019). "An abuse of discretion does not result from a mere error of judgment" but "exists where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." *Id.* It is axiomatic that JNOV can be entered on two bases: where "the movant is entitled to a judgment as a matter of law[] and/or . . . the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Simmons v. Pacor, Inc.*, 674 A.2d 232, 236 (Pa. 1996). Here, "we may conclude that the trial court's denial of JNOV was inappropriate only if there is insufficient, competent evidence to sustain the verdict." *Menkowitz*, 211 A.3d at 804 (citing *Wenrick v. Schloemann-Siemag Aktiengesellschaft*, 564 A.2d 1244, 1246 (Pa. 1989)). "Moreover, JNOV should only be entered in a clear case with any doubts resolved in favor of the verdict winner." *Id.* "An appellate court 'stands on a different plane' than a trial court, and it is the trial court that has the benefit of an 'on-the-scene evaluation of the evidence.'" *Id.* (quoting *Exner v. Gangewere*, 152 A.2d 458, 472-73 (Pa. 1959)). Thus, "while the appellate court may

---

[13] We briefly recall that the first, second, and fourth elements of the *McDonald* test require McCarthy to establish that it was a general contractor on the Library project, it occupied or controlled the premises of the project, and McCarthy entrusted part of its regular business to RRR. *See McDonald*, 153 A. at 426.

disagree with a verdict, it may not grant a motion for JNOV simply because it would have come to a different conclusion." *Id.* "Indeed, the verdict must stand unless there is no legal basis for it." *Id.* (citing *Birth Ctr. v. St. Paul Cos.*, Inc., 787 A.2d 376, 383 (Pa. 2001)).

While ours as well as the Superior Court's standard and scope of review of the trial court's denial of McCarthy's JNOV is clear, our review in this case is complicated by the trial court's pre-trial order that precluded McCarthy "from raising the statutory employer defense at trial in any manner whatsoever." (Trial Ct. Order, 08/07/21). Thus, in our view, there was no record on which the Superior Court could have assessed whether McCarthy satisfied the first, second, and fourth elements of the *McDonald* test. The Superior Court also was not permitted to scour the pre-trial and post-trial record to support its determinations on those elements. *See Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 433 (Pa. 2015) (noting that "Superior Court's approach in scouring the record for evidence which could" support its outcome was "contrary to the approach this Court has mandated"). Indeed, we could not uncover any authority to support the Superior Court's extended scope of review aside from the Superior Court's own decision in *Sheard v. J.J. DeLuca Co., Inc.*, 92 A.3d 68, 78 n.3 (Pa. Super. 2014) (considering averments made by plaintiff in complaint in determining that JNOV should have been entered in defendant's favor on basis of statutory employer immunity), by which we are not bound. *In re Est. of duPont*, 2 A.3d 516, 524 (Pa. 2010). We, therefore, conclude that the Superior Court abused its discretion by exceeding its scope of review when it scoured the entire record for evidence to support its determinations with respect to the first, second, and fourth elements of the *McDonald* test.

We further note that where a general contractor establishes that it is the statutory employer of an injured employee of a subcontractor, then the court of common pleas lacks jurisdiction to consider the employee's claim that the general contractor was

negligent. *LeFlar*, 515 A.2d at 879. In that vein, whether the general contractor is the statutory employer of the injured employee of the subcontractor is a question of law that a court must first decide before addressing the merits of the employee's negligence claim. *See e.g.*, *Peck*, 814 A.2d at 189 ("In determining whether a party is a statutory employer, *courts* should construe the elements of the *McDonald* test strictly and find statutory employer status only when the facts clearly warrant it.") (emphasis added); *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 400 (Pa. 2021) ("A court's sua sponte ability to raise subject-matter defects on its own ensures that a court, at any time, can make certain that the courts are adjudicating only those classes of cases which the law allows us to hear."); *Sun Ship Emps. Ass'n v. Indus. Union of Marine and Shipbuilding Workers of Am., Loc. No. 2 C.I.O.*, 40 A.2d 413, 415 (Pa. 1944) ("The petition before us cannot raise in a preliminary way the right of the plaintiff to recover on its cause of action, it only concerns the right to have the cause of action heard and determined. Here, McCarthy first raised the statutory employer defense in a motion for summary judgment, which the trial court denied without any explanation. (R.R. at 249a.) At that point, however, once the trial court's jurisdiction was placed into question, McCarthy should have been afforded the opportunity to develop a record and obtain a ruling thereon *before* the start of the jury trial. Accordingly, we reverse the Superior Court's decision, vacate the trial court's orders denying McCarthy's post-trial motion requesting JNOV and entering judgment in favor of Yoder, and remand to the trial court to reconsider this matter. Specifically, the trial court should make determinations on whether McCarthy satisfies the three prongs of the *McDonald* test that are in dispute. To the extent that a record is necessary, the trial court should conduct an evidentiary hearing. If the trial court determines that McCarthy is entitled to the statutory employer defense, then it must grant

McCarthy's post-trial motion for JNOV. If the trial court determines otherwise and denies McCarthy's post-trial motion for JNOV, then it must enter judgment in favor of Yoder.

## IV. CONCLUSION

For all these reasons, Yoder has failed to advance a special justification for us to overrule our decades-old precedent in *Fonner* and *LeFlar*. We nevertheless reverse the Superior Court's decision, vacate the trial court's orders denying McCarthy's post-trial motion requesting JNOV and entering judgment in Yoder's favor, and remand this matter to the trial court for further proceedings consistent with this opinion.

Chief Justice Todd and Justices Dougherty, Wecht, Mundy and McCaffery join the opinion.

Justice McCaffery files a concurring opinion in which Justices Dougherty and Mundy join.

Justice Donohue did not participate in the consideration or decision of this matter.